COMMONWEALTH of Pennsylvania,
Appellee,

v.

Frank Lee KROUSE, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 19, 2002.

Filed May 20, 2002.

Baker, Public Defender, Philadelphia, amicus curiae.

Michael Handler, Asst. Dist. Atty., Indiana, for Com., appellee.

Before DEL SOLE, P.J., JOHNSON, HUDOCK, FORD ELLIOTT, ORIE MELVIN, LALLY–GREEN, TODD, BENDER and BOWES, JJ.

JOHNSON, J.

¶ 1 Frank Lee Krouse appeals from the judgment of sentence following his conviction for indecent assault and the trial court's determination that he is a "sexually violent predator" ("SVP") pursuant to Pennsylvania's Megan's Law II, 42 Pa.C.S. §§ 9791–9799. Megan's Law II requires *inter alia* registration of an SVP's address with the Pennsylvania State Police and community notification of the SVP's ad-

dress for potentially the rest of the SVP's life. Krouse asserts that the Commonwealth failed to establish by clear and convincing evidence that Krouse was an SVP. He also challenges the constitutionality of various aspects of Pennsylvania's Megan's Law II. After review of the entire record, we conclude that the Commonwealth failed to produce clear and convincing evidence sufficient to support the trial court's determination of Krouse as an SVP. Therefore, we reverse the trial court as to the SVP determination and all requirements that would follow from such a determination under Megan's Law II. The judgment of sentence is otherwise affirmed.

¶ 2 In May 2000, the District Attorney of Indiana County charged Krouse with sexual offenses related to allegations of oral sex in June 1999 involving a ten-year-old boy in whose house Krouse was then residing. In July 2000, Krouse pled guilty to the indecent assault charge, see 18 Pa.C.S. § 3126, a few days after Megan's Law II became effective. The court then ordered the Pennsylvania Sexual Offenders Assessment Board ("Assessment Board") to determine whether Krouse should be classified as an SVP. Mr. William Allenbaugh, an Assessment Board Member, found that Krouse met the criteria for an SVP under Megan's Law II. The District Attorney praeciped the court to designate Krouse an SVP.

¶ 3 Krouse then filed a motion to challenge the constitutionality of the SVP determination under Megan's Law II and various amicus curiae groups filed briefs regarding the constitutional challenge. The trial court heard argument on the issue and, in December 2000, denied the motion. In March 2001, the court held a hearing pursuant to 42 Pa.C.S. § 9795.4(e) in which a defense expert testified that Krouse did not fit the criteria for an SVP.

Additionally, Assessment Board Member Allenbaugh, who had not interviewed Krouse, testified that Krouse should be adjudicated an SVP. The court then determined that Allenbaugh was credible and that Krouse was an SVP under Megan's Law II. The court did not however make specific findings regarding the factors detailed in Megan's Law II, 42 Pa.C.S. § 9795.4(b), supporting the SVP classification nor did the court specifically set forth findings regarding the necessary elements of an SVP as defined in 42 Pa.C.S. § 9792. Krouse timely appealed.

¶ 4 Krouse presents the following issues for our review.

1. Was the evidence sufficient to support the finding that defendant is a sexually violent predator?

2. (A) Do not the provisions of the amended Megan's Law inflict "punishment" by requiring a trial court at the time of sentence to impose upon an adjudicated defendant the unalterable requirement of life-long reporting on a quarterly basis to the State Police, accompanied by a mandate that the defendant pay for and participate in an "at least monthly" counseling program designated and "monitored" by the Pennsylvania Board of Probation and Parole, and verified quarterly to the State Police, while he is subjected simultaneously to an aggressive campaign of public notification through the use of leaflets, notices and the Internet that are used to publicize the judicial fact that he has been declared by a court to be a "sexually violent predator," and with the defendant subject to a penalty of imprisonment throughout his life should he fail to report or verify his compliant status?

(B) Do not the Sexually Violent Predator provisions of Pennsylvania's Megan's Law, which provide for the

adjudication of appellant as a "sexually violent predator" and the enhanced penalties attending that status, deprive appellant of his rights to procedural due process, including a standard of proof beyond a reasonable doubt, a right to trial by jury, and the protection of an information or indictment?

(C) Are not the "sexually violent predator" provisions of Pennsylvania's Megan's Law unconstitutionally vague, and do they not render adjudicatory proceedings unavoidably arbitrary and capricious by conferring impermissible discretion upon assessors and judges in violation of the Due Process Clause of the United States and Pennsylvania Constitutions?

(D) Does not the Megan's Law subject the appellant to cruel and unusual punishment and violate his right to substantive due process, as protected by our state and federal constitutions, by punishing appellant for his mental status and a highly speculative prediction of future dangerousness?

(E) If appellant's predicate offense is the *actus reas* of the charge of SVP, does not an adjudication subject appellant to separate criminal proceedings on a greater included offense, in violation of his state and federal double jeopardy rights?

(F) Do not the assessment and adjudicatory procedures of Megan's Law compel appellant to give testimony against himself or suffer a negative inference from his silence, in violation of his state and federal self-incrimination privilege?

(G) Do not the assessment and adjudicatory procedures of Megan's Law violate statutory confidentiality protections afforded appellant and his coextensive right to privacy?

(H) Do not the sexually violent predator provisions of Megan's Law violate the doctrine of separation of powers as it is embodied in Article V, §§ 1, 2, and 10(c) of the Pennsylvania Constitution by infringing upon the rule making power the Pennsylvania Supreme Court has been granted over judicial procedure and practice?

(I) Did the legislature violate Article III, § 3, by enacting a bill that contains more than one subject?

(J) By subjecting appellant to the broadest form of public notification about his criminal status, identity, and location, and by publicly declaring that he is a "sexually violent predator," does not the implementation of Pennsylvania's Megan's Law constitute a gross and unjustifiable violation of appellant's state and federal constitutional right to privacy?

Supplemental Brief for Appellant at 2–4. As we reverse on the basis of Krouse's first issue, we need not address the constitutional issues. *See In re Fiori*, 543 Pa. 592, 673 A.2d 905, 909 (1996) (stating that it is a "sound tenet of jurisprudence that courts should avoid constitutional issues when the issue at hand may be decided upon other grounds").

¶ 5 A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. *See Commonwealth v. Weston*, 561 Pa. 199, 749 A.2d 458, 460 n. 8 (2000). The appropriate standard of review regarding the sufficiency of the evidence is "whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient

to support all the elements of the offenses." *Commonwealth v. DeJesus,* 567 Pa. 415, 787 A.2d 394, 398 (2001). As a reviewing court, we "may not weigh the evidence and substitute our judgment for that of the fact-finder." *Commonwealth v. Vetrini,* 734 A.2d 404, 407 (Pa.Super.1999). Furthermore, a fact-finder is free to believe "all, part or none" of the evidence presented. *Id.*

¶ 6 "At the hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator." 42 Pa.C.S § 9795.4(e)(3). Accordingly, in reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied. In most cases, we will determine whether the record supports the findings of fact made by the trial court and then review the legal conclusions made from them. However, in cases such as the present case, where the trial court has stated its legal conclusions but has not provided specific findings of fact, we will review the entire record of the post-conviction SVP hearing as our scope of review is plenary. Therefore, if it appears based on all of the evidence viewed in a light most favorable to the Commonwealth that an SVP classification can not be made out in a clear and convincing manner, then we will be obliged to reverse the SVP designation.

¶ 7 The statute defines an SVP as follows:

### § 9792.  Definitions

\* \* \* \* \*

"Sexually violent predator." A person who has been *convicted of a sexually violent offense* as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) *due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.*

42 Pa.C.S. § 9792 (emphasis added).

¶ 8 The Pennsylvania Supreme Court and this Court declared that the process of SVP determination in Megan's Law I unconstitutionally violated a defendant's due process rights. *See Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593 (1999); *Commonwealth v. Halye,* 719 A.2d 763 (Pa.Super.1998). Previously, once convicted of a sexual offense, the *individual* had to rebut the presumption of SVP classification by clear and convincing evidence. *See Williams,* 733 A.2d at 594. In declaring the process unconstitutional, the Supreme Court stated that the SVP determination process must guarantee to the individual the "full panoply of the relevant protections which due process guarantees." *Id.* at 603.

¶ 9 Megan's Law II's amended procedure became effective in July 2000. The statute specifically details the process by which an individual is determined to be a SVP. After a defendant is convicted of an offense specified in Section 9795.1, such as indecent assault in this case, the trial court must order the Assessment Board to assess the defendant for the appropriateness of an SVP classification. *See* 42 Pa.C.S. § 9795.4(a). The administrative officer of the Assessment Board then assigns one of its members to conduct the assessment pursuant to Section 9795.4(b). Section 9795.4(b) specifies that the assessment must include an examination of the following factors:

### § 9795.4.  Assessments

\* \* \* \* \*

(b) Assessment.... *An assessment shall include, but not be limited to, an examination of the following:*

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment filed as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9795.4(b) (emphasis added).

¶ 10 Following the submission of a written report containing the assessment and a praecipe filed by the district attorney, the trial court must hold a hearing. *See* 42 Pa.C.S. § 9795.4(e). During the hearing on the SVP classification, the following procedural protections apply:

The individual and district attorney shall be given notice of the hearing and an opportunity to be heard, the right to call witnesses, the right to call expert witnesses and the right to cross-examine witnesses. In addition, the individual shall have the right to counsel and to have a lawyer appointed to represent him if he cannot afford one. If the individual requests another expert assessment, the individual shall provide a copy of the expert assessment to the district attorney prior to the hearing.

42 Pa.C.S. § 9795.4((e)(2)).

¶ 11 The most significant change in the SVP classification procedures was the shift in the burden of proof. Rather than requiring the individual to rebut a presumption of SVP classification, Megan's Law II requires that "[a]t the hearing prior to sentencing the court shall determine whether the *Commonwealth has proved by clear and convincing evidence* that the individual is [an SVP]." 42 Pa.C.S. § 9795.4(e)(3) (emphasis added). We note that it is the *trial court* that has the sole authority to determine a defendant to be an SVP.

¶ 12 In the present case, at the conclusion of the hearing, the trial court provided the following findings of fact:

1. On July 19, 2000, following defendant's plea to the offense of Indecent Sexual Assault, this court requested the Pennsylvania Sexual Offenders Assess-

ment Board do an evaluation and assessment of defendant.

2. On September 18, 2000, following receipt of the Pennsylvania Sexual Offenders Assessment Board's report, the Commonwealth praeciped this Court to certify the defendant [an SVP].

3. On March 15, 2001, this Court conducted a hearing per the Commonwealth's praecipe.

4. At hearing, William Allenbaugh, from the Pennsylvania Sexual Offenders Assessment Board, offered an opinion that the defendant should be certified as [an SVP]. The Court accepts this testimony as credible.

5. The Court finds that the Commonwealth has met its burden of proving, by clear and convincing evidence, that the defendant is [an SVP].

Trial Court Order, March 15, 2001, at 1–2.

¶ 13 These findings do not necessarily support the trial court's conclusion in Finding 5 that the Commonwealth met its burden of clearly and convincingly proving each element of the SVP classification. The fact that the trial court found the testimony of the Assessment Board Member credible does not necessarily lead to the conclusion that the Commonwealth proved by clear and convincing evidence all the elements of an SVP classification as required by Section 9795.4(e)(3). As our Supreme Court noted in *Williams* the defendant's "livelihood, domestic tranquility and personal relationships are unquestionably put in jeopardy by the notification provisions." *Williams*, 733 A.2d at 607. Additionally, the Court noted that the SVP classification requires "a subjective assessment of an offender's potential future dangerousness" which includes a greater risk of error than objective determinations. *Id.* For this Court to affirm a determination that will have long lasting effects on the individual's liberty and includes a high

risk of error, we must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator. Because the trial court failed to provide us with findings to support its conclusion, we must look to the entire record and determine whether the evidence in the record can be made out to clearly and convincingly support the trial court's conclusion.

¶ 14 Mr. Allenbaugh testified that Krouse satisfied the requirements for an SVP classification· as defined in Section 9792. N.T. Hearing, 3/15/01, at 34. Allenbaugh concluded that Krouse had the mental abnormality of a child molester based on his finding of "grooming behavior". N.T. Hearing, 3/15/01, at 26. Allenbaugh also concluded that Krouse had a personality disorder, not otherwise specified, with antisocial features. N.T. Hearing, 3/15/01, at 35. Further, Allenbaugh opined that Krouse was a predator and likely to reoffend based on his findings that Krouse had erections to males, was relatively young, and had not had stable adult sexual relationships. N.T. Hearing, 3/15/01, 27–28, 31–32, 46.

¶ 15 Upon review of Allenbaugh's testimony that the trial court found credible, we cannot conclude that the · Commonwealth proved the necessary elements by clear and convincing evidence. Allenbaugh's testimony does not clearly and convincingly prove the element of "likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9792 "Sexually Violent Predator." Mr. Allenbaugh repeatedly noted the imperfect science of predicting the likelihood of reoffense and that his assessment of Krouse was complicated by his inability to interview Krouse or perform a polygraph test. N.T. Hearing, 3/15/01, at 12–13, 33, 42, 49. Therefore, he based his assessment on published studies and specifically on the finding that

individuals who have erections to males "are more likely to recidivate than others that have erections to young girls." N.T. Hearing, 3/15/01, at 33. The evidence, however, does not clearly and convincingly indicate that Krouse did have erections to males. N.T. Hearing, 3/15/01, at 40–41. The evidence upon which Allenbaugh based his conclusion only indicates that Krouse had oral sex with the victim, which does not necessarily require that Krouse had an erection to the victim. Therefore, Allenbaugh's testimony does not clearly and convincingly support a conclusion that Krouse is likely to reoffend.

¶ 16 Additionally, Allenbaugh's conclusion that Krouse has a mental abnormality based on grooming behavior is also not supported by clear and convincing evidence. Allenbaugh describes grooming behavior as follows:

> [Y]ou select a potential victim and what you do is over a period of time you get close to them prior to the sexual act. . . And even though you may not be touching them or acting on them, during a period of time between the onset of the sexual course and the actual behavior there is [sic] usually masturbatory fantasies. This is where you get closer so *you begin talking to the person sexually,* making them feel special, giving them gifts, wrestle with them, single them out, make them someone extremely special. Then when you have their trust, then you sexually exploit them.

N.T. Hearing, 3/15/01, at 21–22. The evidence that Allenbaugh presented to support his finding of grooming is that Krouse inappropriately spoke to the victim about sexual issues and that the victim and Krouse wrestled during which time Krouse's arm would brush against the victim's groin area. N.T. Hearing, 3/15/01, at 24. Allenbaugh also emphasized as evidence of grooming that Krouse "got real

close to this boy" rather than the two young girls in the family and did not spend much time with the adults in the family. N.T. Hearing, 3/15/01, at 25. He further stated that there "was a high probability of masturbatory fantasies to this child." N.T. Hearing, 3/15/01, at 25. However, there was no evidence of such fantasies. We cannot conclude that these allegations support the finding of grooming when "wrestling behavior" is fairly common between boys and their relatives and that it is not uncommon for family members to spend more time with certain members of the family than others. As the facts cited by Allenbaugh do not support a conclusion of grooming behavior, the finding of a mental abnormality is not based on the necessary clear and convincing evidence.

¶ 17 Furthermore, in regard to the personality disorder element, we note that in Allenbaugh's assessment report, he stated, "As mentioned earlier this writer did not meet with Mr. Krouse, and therefore, *cannot offer a diagnosis.* However, it appears that the behavioral characteristics just mentioned are consistent with the criteria set forth and the DSM IV for adult antisocial personality disorder." Assessment Report, at 7 (emphasis added). At the hearing, Allenbaugh, however, testified that Krouse had a personality disorder not otherwise specified. N.T. Hearing, 3/15/01 at 30. The testimony in light of the report does not meet the criteria for clear and convincing evidence to sustain a finding of a personality disorder, especially considering the diagnostic tests performed by the defense expert during interviews with Krouse, which do not indicate personality disorders. N.T. Hearing, 3/15/01, at 62–69.

¶ 18 Even if we take as true all the Assessment Board Member's testimony, we further note that a number of the statutory factors weigh against a SVP clas-

sification. For example, in regard to factors relating to the present offense, the offense did not involve multiple victims, and there is no evidence of force or cruelty. *See* 42 Pa.C.S. § 9795.4(b)(1). Additionally, this conviction is Krouse's first sexual offense and his prior criminal history involves only a conviction for driving under the influence and admitted illegal drug usage. *See* 42 Pa.C.S. § 9795.4(b)(2); N.T. Hearing, 3/15/01, at 33–34, 61. The Assessment Board Member noted that alcohol was not a factor in the present case. N.T. Hearing, 3/15/01, at 33–34. Additionally, the record does not substantiate any prior incidents involving deviant sexual behavior or mental health issues. N.T. Hearing, 3/15/01, at 60, 61, 67–68.

¶ 19 We therefore conclude that, in this case, the Commonwealth did not present clear and convincing evidence establishing that Krouse is an SVP as defined by Megan's Law II. Our reversal of the SVP designation does not affect Krouse's sentence for the underlying conviction of indecent assault. Our conclusion in this case should not suggest that the elements of an SVP designation cannot be met, nor do we even suggest that the elements could not be met in situations where the defendant exercises his or her right to refuse personal evaluation by the Assessment Board. We are cognizant, however, of the fact that the SVP classification does not automatically apply to an individual convicted of a sexual offense or even to individuals who have molested a child. Rather, the SVP classification has been specifically limited by the legislature to those offenders who have a "mental abnormality or personality disorder that makes [them] more likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9792. Unless the Commonwealth proves all the elements by clear and convincing evidence, we cannot affirm an SVP designation.

¶ 20 Furthermore, in the interest of appellate review, we strongly recommend that trial courts present specific findings of fact regarding the findings necessary for a SVP determination as defined in Section 9792 and the factors specified in Section 9795.4(b) which the legislature has deemed relevant. The Ohio Supreme Court recently detailed what is required in order to provide for meaningful appellate review of a determination based on Ohio's Megan's Law:

In a model sexual offender classification hearing, there are essentially three objectives. *First, it is critical that a record be created for review.* Therefore, the prosecutor and defense counsel should identify on the record those portions of the trial transcript, victim impact statements, presentence report, and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the issue of whether the offender is likely to engage in the future in one or more sexually oriented offenses. . . . [A] clear and accurate record of what evidence or testimony was considered should be preserved, including any exhibits, for purposes of any potential appeal.

Second, an expert may be required, as discussed above, to assist the trial court in determining whether the offender is likely to engage in the future in one or more sexually oriented offenses. . . .

Finally, *the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism* . . . .

Therefore, we are suggesting standards for the trial courts that will aid the appellate courts in reviewing the

evidence on appeal and ensure a fair and complete hearing for the offender.

*Ohio v. Eppinger*, 91 Ohio St.3d 158, 743 N.E.2d 881, 888–889 (2001).

¶ 21 The provisions of the Ohio statute governing SVP determination are similar to those in Pennsylvania. Ohio's statute specifies that "the court shall consider" a list of factors similar to those which 42 Pa.C.S. 9795.4(b) requires the Assessment Board include in its report. *Id.* at 887. It is apparent from the Pennsylvania statute that the factors specified should be the basis for determining the appropriateness of an SVP classification. *See* 42 Pa.C.S. § 9795.4(b). Even though the Pennsylvania statute does not specifically require the court to make findings regarding the factors, we conclude that the trial court should include on the record its reasons for finding the defendant to be an SVP in relation to the statutory factors. *See Ohio v. Eppinger*, 743 N.E.2d at 888–889.

¶ 22 Judgment of Sentence **RE- VERSED** in regard to the Sexually Violent Predator determination and otherwise **AFFIRMED.**

¶ 23 Judge ORIE MELVIN concurs in result.

¶ 24 Judge BOWES files a Concurring Opinion.

¶ 25 Judge BENDER files a Dissenting Opinion.

BOWES, J., Concurring.

¶ 1 I agree with the majority's conclusion that the evidence is insufficient to sustain a finding that Appellant is a sexually violent predator. However, I reach that result on a different basis.

¶ 2 Appellant was charged with involuntary deviate sexual intercourse and indecent assault based on allegations that he had engaged in oral sex with his half-brother's stepson, B.D. and had forced B.D. to engage in oral sex with him. Appellant lived with his half-brother, his brother's common-law wife, and B.D. during 1999. On July 17, 2000, Appellant, who was twenty-four years old and had no prior record other than a driving under the influence, tendered a guilty plea to one charge of indecent assault. *See* 18 Pa.C.S. § 3126. The factual basis for his guilty plea consisted of two sentences: "[Pennsylvania State Trooper Seth Helman] spoke with the victim, B.D., who was under the age of thirteen (13) years, was told that the defendant had had indecent contact with him. The defendant was later interviewed and said, 'If you want me to say I did it, I will.'" N.T. Plea, 7/17/00, at 7.

¶ 3 At the sentencing hearing, the Commonwealth presented its witness, William G. Allenbaugh, II, a licensed psychologist and member of the Pennsylvania Sexual Offenders Assessment Board (the "Board"). Mr. Allenbaugh testified that he had a master's degree in counseling psychology with training in the area of sex offenders. He based his opinion that Appellant was a sexually violent predator on the facts outlined in the police offense report, a report from Board investigator John R. Galski, and the pre-sentence report.

¶ 4 Mr. Allenbaugh's written report, which is included in the certified record, stated that the police offense report contained the following factual averments. The victim's mother and stepfather told police that Appellant always wanted to be around the children instead of adults. According to the victim, Appellant would tell him stories about Appellant's girlfriends and what he would do to them in bed. Then, Appellant told the victim that "you can hump another boy like a girl." Report, William G. Allenbaugh, II ("Report"),

at 2.[1] On several occasions, Appellant tried to get the victim into bed so that he could "hump" him; he succeeded on one occasion. *Id.* Next, Appellant wanted the victim to show Appellant his penis and perform oral sex on him. "The victim claimed that [Appellant] would touch his wiener and then have him do the same back. [Appellant] also put his privates into the victim's mouth," and then would perform oral sex on the victim. *Id.* This activity occurred a "couple of times." *Id.* At the time of the report, the ten-year-old victim was on an unidentified medication and had difficulty remembering things. The report indicated that when confronted by police, Appellant stated, "[I]f you want me to say I did it, I will." *Id.* However, the nature of the accusations that police made to Appellant were not delineated in the police offense report.

¶ 5 According to Mr. Allenbaugh's report, the pre-sentence investigation report indicated the following. The only behavior to which Appellant admitted was brushing up against the victim's genitals when the two were wrestling while fully clothed. He said that he felt guilty enough about that incident to plead guilty to indecent contact. He also admitted to talking about heterosexual "humping" with his nephew, but stated that the boy already knew the mechanics of heterosexual sexual intercourse. *Id.* at 3. Appellant stated that he was not sexually aroused when they had wrestled, he never thought about the victim in a sexual manner, and never fantasized sexually about him. Appellant denied any sexual contact with the victim and claimed that the victim's stepfather was physically abusive toward the boy. Appellant also represented that approximately one year prior to these sexual abuse allegations, Appellant had informed police about some criminal activity of one of the friends of Appellant's half-brother, and the half-brother threatened to retaliate and "take everything . . . away" that Appellant had, *Id.* at 3. Appellant believed that the false charges of sexual abuse were motivated by the incident.

¶ 6 The Board investigator's report provided the following details about Appellant's background. He was the only child born to his parents, although his father had children by another woman. Those children did not associate with Appellant. Appellant's father died before he was born. Appellant was described by unidentified people who the investigator interviewed as shy and lazy and as having a number of jobs for short periods.[2] There was no indication that Appellant had received any mental health treatment. He drank heavily and was involved briefly with drugs. He had sexual intercourse twice, when he was drunk, and had one girlfriend but never was sexually active with her.

¶ 7 In his report and during his testimony at the sentencing hearing, Mr. Allenbaugh rendered his opinion that Appellant was a sexually violent predator by relying heavily on the victim's unproven allegations regarding involuntary deviate sexual intercourse. Report at 6–8. However, the charges of involuntary deviate sexual intercourse were *nol prossed,* Appellant admitted to no specific acts at the time of his guilty plea, and Appellant repeatedly denied ever engaging in involuntary deviate sexual intercourse with the victim. Based on this factual posture, I believe that reliance upon the unproven, *nol prossed,* and denied allegations of involuntary deviate sexual intercourse was improper. Since

---

1. This report is not dated.

2. There was evidence at the sentencing hearing to refute this allegation as Appellant apparently had a steady job in a landscaping establishment.

those allegations formed the basis for Mr. Allenbaugh's opinion, as set forth below, I believe that Appellant is correct that there is insufficient evidence to support the finding that he is a sexually violent predator.[3]

¶ 8 At the onset, Mr. Allenbaugh purportedly premised his opinion that Appellant had engaged in grooming behavior towards the boy solely on the facts that he had wrestled with the child while clothed and had spoken to him about "humping." Report at 5. However, Mr. Allenbaugh's subsequent testimony irrefutably demonstrates that he relied upon the victim's allegations about oral sex in rendering his opinion that Appellant engaged in grooming behavior, that he is a sexually violent predator, and that he has a mental abnormality.

¶ 9 Mr. Allenbaugh stated that grooming is a process where a person selects the potential victim, gets close to the victim, begins to look at that victim as a sexual object, engages in masturbatory fantasies about the victim, gains the victim's trust by giving him or her gifts, and then sexually exploits the victim. N.T. Sentencing– Megan's Law, 3/15/01 ("Sentencing"), at 21–22. Mr. Allenbaugh's report indicates that Appellant specifically denied having any sexual fantasies about the victim, denied ever having an erection either when thinking about him or when in his presence, denied giving him gifts, and denied sexually exploiting him. The opinion that Appellant engaged in grooming behavior obviously can only be based upon the victim's unproven allegations. *See* Sentencing at 25.

¶ 10 Next, Mr. Allenbaugh defined a sexual predator as "an individual who develops a relationship with somebody solely for the purpose of sexual exploitation; their motive is nothing other than that." Sentencing at 27. Mr. Allenbaugh again stated that the fact that there was grooming in this case was a significant factor in his determination that Appellant was a predator. Then, when opining that Appellant was a predator, Mr. Allenbaugh expressly relied on the facts that Appellant had erections in the presence of the victim, had the victim perform oral sex on him, and performed oral sex on the victim. Sentencing at 27–28.

¶ 11 Finally, Mr. Allenbaugh premised his opinion that Appellant had a mental abnormality on the predicate finding that Appellant engaged in grooming behavior. Sentencing at 26. Mr. Allenbaugh concluded that Appellant had a mental abnormality or personality disorder known as personality disorder NOS with antisocial features. Sentencing at 28. This determination was based in part upon valid evidence, including facts about Appellant's lifestyle, *id.* at 29–30; however, it also was premised upon the unsubstantiated allegation that Appellant had erections to young males, which Mr. Allenbaugh found "extremely significant." *Id.* at 32.

¶ 12 I conclude that a determination that a defendant is a sexually violent predator cannot be based upon unproven allegations that are not established by the factual basis for a guilty plea and that are not supported by the nature of the charges to which a defendant has pled guilty, especially when the defendant consistently has denied the unproven allegations. *Com-*

---

**3.** Appellant specifically raises the argument that Mr. Allenbaugh's opinion was based on "conjecture, speculation, and inference," and on "limited and inadequate information, much of it unreliable hearsay." Appellant's brief at 13, 16. Appellant also points out that he has denied committing involuntary deviate sexual intercourse and that the only behavior that he admits is that he "may have" touched the victim's genitals while they were wrestling. Appellant's brief at 18.

monwealth v. Berrigan, 369 Pa.Super. 145, 535 A.2d 91 (1987) (en banc) (when imposing sentence, the sentencing court is not permitted to rely upon denied allegations established only through hearsay). This procedure is equivalent to the prohibited procedure whereby a sentencing court, when sentencing the defendant, has relied upon the facts of a crime which the jury determined the defendant had not committed. See Commonwealth v. Smithton, 429 Pa.Super. 55, 631 A.2d 1053 (1993). The determination of sexually violent predator status carries with it serious, life-long repercussions, and must be based upon facts of record, and not mere allegations of wrongful conduct, no matter how egregious.

¶ 13 In this case, Appellant pled guilty only to one count of indecent assault. The plea colloquy contains no specifics regarding the nature of that indecent assault. All charges of involuntary deviate sexual intercourse were nol prossed. During the pre-sentence investigation, Appellant admitted to brushing against the victim's penis while wrestling with the fully clothed boy and to engaging him in male banter about heterosexual conduct. Indeed, he felt guilty about brushing against the boy, and Mr. Allenbaugh indicated that feelings of guilt are inconsistent with grooming and predatory behavior. In the pre-sentence report, Appellant denied having an erection after brushing the boy. He denied having any sexual feelings for the boy. He

denied developing a relationship with him solely for the purpose of sexual exploitation. He also believed there was a motivation for the boy's stepparent to make false allegations against him.

¶ 14 In conclusion, my review of Mr. Allenbaugh's own definitions of grooming behavior and predator leads me to conclude that the findings that Appellant engaged in grooming behavior and was a predator were not based upon the only facts of record about the underlying offense, namely that he wrestled with B.D. while clothed and brushed against his genital area and that he engaged in male banter about heterosexual conduct. Any finding that Appellant developed a relationship with the victim for the sole purpose of sexual exploitation had to be premised upon the unproven, dropped allegations regarding oral sex. Thus, the opinions cannot be sustained since, as Appellant correctly notes, they are based on unreliable hearsay, mere suspicion, and conjecture.

¶ 15 Had Appellant pled guilty to the charges involving involuntary deviate sexual intercourse, then there would be an admission to the underlying behavior and reliance upon the victim's allegations would be entirely proper.[4]

¶ 16 For the foregoing reasons, I agree with the majority that judgment of sentence be reversed with respect to the sexually violent predator determination and otherwise affirmed.[5]

---

**4.** Although we clearly cannot rely upon the defense testimony since the sentencing court rejected that testimony, I must observe that it is consistent with that of the Commonwealth. Specifically, Appellant's expert witness, Dr. Robert Mark Wettstein, observed that Appellant repeatedly denied having sexual contact with the boy and told Dr. Wettstein that he pled guilty to indecent contact because he had been wrestling with the victim and brushed up against his genitals. Sentencing at 59. Appellant admitted that he had sexual inter-

course with women on two occasions and denied "any other sexual experiences in his lifetime whether with children or with adults of either gender." Id. Appellant also denied having any other sexual problems or perversions. He told Dr. Wettstein that he never was sexually aroused by any males, whether adult or children.

**5.** As a result of his conviction pursuant to 18 Pa.C.S.A. § 3126, Appellant would still be subject to the ten-year registration require-

BENDER, J., Dissenting.

¶ 1 The Appellant pled guilty on July 11, 2000 to the offense of Indecent Sexual Assault. The ten-year-old victim was the child of a woman who permitted Appellant to stay in her home because Appellant had no other place to stay. On March 15, 2001, Appellant was sentenced to undergo incarceration in the Indiana County Jail for a period of not less than nine months nor more than twenty-three months. Appellant was given credit for time served. Appellant was further sentenced to three years probation, which was to run consecutive to the period of incarceration. Accordingly, absent consideration of time served prior to sentencing, Appellant will have no further involvement with the criminal system, after March 15, 2004.

¶ 2 Appellant was further found to be a sexually violent predator under the provisions of Megan's Law II and sentenced to comply with registration requirements of Megan's Law II for the remainder of his life.

¶ 3 Appellant is now before this Court raising the issue of whether there was sufficient evidence to support the finding that Appellant was a sexually violent predator. In his Supplemental Brief, Appellant also raises the issues concerning the constitutionality of Megan's Law II set forth in the Amicus Curiae Brief submitted on behalf of the Defender Association of Philadelphia, the American Civil Liberties Union of Pennsylvania, the Public Defender Association of Pennsylvania and the Pennsylvania Association of Criminal Defense Lawyers.

¶ 4 In the documents submitted to this Court, there is little discussion of the sufficiency issue and voluminous discussion of the constitutional issues raised in the Amicus Curiae Brief and the Brief of the Attorney General. Also the oral argument focused primarily on the constitutional issues.

¶ 5 The constitutional issues raised are currently before the Pennsylvania Supreme Court for disposition. See Case Appendix of Amicus Curiae. Clearly the jurisdiction as to the constitutional issues rests with the Pennsylvania Supreme Court. 42 Pa.C.S.A. § 722(7).

¶ 6 Given the uncertainty of the Megan's Law II provisions currently pending before the Pennsylvania Supreme Court and given the lack of focus in this case on the sexually violent predator decision, I would defer making a decision in the instant case concerning the sexually violent predator status until the Supreme Court has ruled. I believe that the sexually violent predator decision could be affected by the decision of the Supreme Court. The issues currently before our Court and before the Supreme Court raise due process issues relating to the adjudicatory process (see Brief of Amicus Curiae, pp. 36–48) and issues as to the arbitrariness and capriciousness of the adjudicatory process (see Brief of Amicus Curiae, pp. 49–61). Given the issues raised as to the adjudicatory process, it would seem prudent to wait for Supreme Court guidance before addressing the sexually violent predator decision.

¶ 7 To defer the decision would in no way prejudice the Appellant or the interest of society because Appellant will be on probation until March 15, 2004.

¶ 8 Accordingly, I would defer the sexually violent predator decision in the instant case pending the Supreme Court ruling on Megan's Law II.

ment found at 42 Pa.C.S.A. § 9795.1(a)(1). Appellant has not raised any separate constitutional challenge to the ten-year registration requirement.