J-S37043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JOHN S. ORTEGA, | : | |
| | : | |
| Appellant | : | No. 1845 MDA 2016 |

Appeal from the Judgment of Sentence entered November 24, 2014
in the Court of Common Pleas of Berks County,
Criminal Division, No(s):  CP-06-CR-0001670-2014

BEFORE:  STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 27, 2017**

John S. Ortega ("Ortega") appeals from the judgment of sentence entered after he pled guilty to corruption of minors,[1] made final by an October 19, 2016 Order (hereinafter "the SVP Order") classifying him as a sexually violent predator ("SVP").[2]  We affirm.

---

[1] **See** 18 Pa.C.S.A. § 6301(a)(ii).

[2] This Court has held that where, as here, "a defendant pleads guilty and waives a pre-sentence SVP determination, the judgment of sentence is not final until that determination is rendered." **Commonwealth v. Schrader**, 141 A.3d 558, 561 (Pa. Super. 2016).  Accordingly, the SVP Order is a component of the judgment of sentence imposed upon Ortega on November 24, 2014, **see id.** at 562, and this appeal properly lies from the judgment of sentence.  **See Commonwealth v. Lawrence**, 99 A.3d 116, 117 n.1 (Pa. Super. 2014) (stating that "a direct appeal in a criminal case can only lie from the judgment of sentence.").  We have therefore amended the caption accordingly.

The trial court concisely summarized the relevant factual and procedural history underlying this appeal, which we adopt herein by reference. *See* Trial Court Opinion, 12/29/16, at 1-3.[3]

In this timely appeal, Ortega presents the following issue for our review: "Whether the [trial] court erred in relying upon improper evidence in making its determination that [] Ortega met the criteria as a [SVP,] where the court relied upon the defense's lack of response to the [seven-month] statement made at sentencing by the victim's mother?" Brief for Appellant at 7 (some capitalization omitted).

In reviewing a claim that the evidence was insufficient to support an SVP designation, we utilize the following standard of review:

> A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. The appropriate standard of review regarding the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses. As a reviewing court, we may not weigh the evidence and substitute our judgment for that of the fact-finder. Furthermore, a fact-finder is free to believe all, part or none of the evidence presented.

> At the [SVP] hearing[,] … the court shall determine whether the Commonwealth has proved by clear and convincing

---

[3] On November 24, 2014, the trial court sentenced Ortega to 9 to 23 months in prison, followed by five years of probation. At the sentencing hearing, the victim's mother provided a victim impact statement (hereinafter "the mother's statement"), which the prosecutor read aloud. *See* N.T., 11/24/14, at 9-12. The mother's statement alleged, in relevant part, that Ortega's sexual abuse of the victim occurred multiple times over a period of over seven months (hereinafter, "the seven-month statement"). *Id.* at 12.

evidence that the individual is a sexually violent predator. Accordingly, in reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied.

*Commonwealth v. Brooks*, 7 A.3d 852, 860 (Pa. Super. 2010) (citation omitted).

Ortega argues that the trial court erred in relying upon improper evidence, *i.e.*, the seven-month statement, in determining that he met the requirements of an SVP, which determination "is inherently flawed since it is based upon unsubstantiated allegations[.]" Brief for Appellant at 12, 18. Specifically, Ortega points out that the timeline of the abuse, as established in the guilty plea, was between the summer of 2012 and November 2012, whereas the seven-month statement alleged a slightly longer time period. *Id.* at 14-15. According to Ortega, "it is plain from the record that the trial court clearly relied heavily on the mother's statement[]. Thus, in vital part, the trial court's Opinion of [] Ortega's SVP status was formed based on uncharged conduct[,]" which is impermissible under the law. *Id.* at 15. In support, Ortega relies upon the Concurring Opinion of the Honorable Mary Jane Bowes in *Commonwealth v. Krouse*, 799 A.2d 835 (Pa. Super. 2002) (*en banc*), wherein she stated the following:

I conclude that a determination that a defendant is a sexually violent predator cannot be based upon unproven allegations that are not established by the factual basis for a guilty plea and that are not supported by the nature of the charges to which a

defendant has pled guilty, especially when the defendant consistently has denied the unproven allegations. ***Commonwealth v. Berrigan***, 369 Pa. Super. 145, 535 A.2d 91 (Pa. Super. 1987) (*en banc*) (when imposing sentence, the sentencing court is not permitted to rely upon denied allegations established only through hearsay).

***Krouse***, 799 A.2d at 845-46 (Bowes, J., concurring).

Ortega further asserts that "the [trial] court focused a great deal of attention … on the fact that neither [] Ortega nor defense counsel corrected or rebutted [the seven-month statement]." Brief for Appellant at 16 (citing, *inter alia*, N.T. (SVP Hearing), 10/14/16, at 91-92 (wherein the trial court stated to defense counsel "either [you or] your client could have said that the facts that [the victim's mother] said about what happened are not true[,] or you could have told [the court] that's not true. But no one corrected [the victim's mother] when she said [the assaults] occurred for over 7 months.")); ***see also*** Brief for Appellant at 18 (asserting that "the court forced [] Ortega to adopt these erroneous statements as truth due to his failure to eschew civility and challenge the victim's mother.").

In its Opinion, the trial court summarized the relevant law, explained the court's reasons for determining that Ortega met the requirements for SVP classification, thoroughly addressed Ortega's above-described claims, and determined that they lack merit. ***See*** Trial Court Opinion, 12/29/16, at 3-7. In sum, the trial court stated that "[t]he [c]ourt was not focused in any way upon the [] seven-month statement in rendering its decision, [and] was not interested in arguing with defense counsel about what he did or did not

- 4 -

do at the sentencing hearing in response to the seven-month statement …."
*Id.* at 7. Our review reveals that the trial court's cogent reasoning is supported by the record and the law. Accordingly, as we discern no abuse of discretion or error of law by the trial court in making its SVP determination, which is supported by sufficient evidence, we affirm based upon the trial court's reasoning in rejecting Ortega's sole issue on appeal. *See id.* at 3-7.

Judgment of sentence affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/2017

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: OF BERKS COUNTY, PENNSYLVANIA
: CRIMINAL DIVISION
v. :
: No. CP-06-CR-1670-2014
JOHN ORTEGA, :
            Defendant :

Jonathan H. Kurland, Assistant District Attorney, for Commonwealth
Allan L. Sodomsky, for Defendant, John Ortega

**OPINION, Keller, S.J.**     **Dated: December 2⁵, 2016**

    John Ortega (hereinafter "Defendant"), appeals from the October 19, 2016 order[1] classifying Defendant as a sexually violent predator.

## I. FACTUAL and PROCEDURAL HISTORY

    Defendant was charged with Statutory Sexual Assault, 2 counts of Intimidation of Witnesses or Victims, Aggravated Indecent Assault, Corruption of Minors, and Indecent Assault. On November 24, 2014, Defendant entered a negotiated plea of guilty to Corruption of Minors, 42 Pa.C.S.A. § 6301(a)(ii), a Tier I offense under the Sexual Offender Registration and Notification Act (hereinafter "SORNA"). The factual basis for the plea was placed on the record:

> Mr. Kurland: The victim in this matter is a female juvenile with a date of birth of May 29ᵗʰ, 1998. The defendant's date of birth is September 15ᵗʰ, 1971. The defendant and the victim are not married to one another. Between the period of the Summer of 2012 through to November of 2012, at the location of the defendant's residence ... on numerous occasions at his residence the defendant had illegal sexual relations with the minor female victim including sexual intercourse.
>
> Mr. Sodomsky: Your Honor, I believe the date of birth was incorrect. I believe it's September 5ᵗʰ, 1971, but all the other things we concur with.

[1] The order is titled "Praecipe for Hearing and Results of Evaluation." The text clearly indicates it is an "order."

1

The Court: Are you pleading guilty to this offense because you committed it?
The Defendant: Yes, Sir.

Transcript of Proceedings, Nov. 24, 2014, pp. 4-5.

Defendant waived his right to a pre-sentence assessment and determination of classification as a sexually violent predator and asked to be immediately sentenced. In response to the Court's inquiry, the Commonwealth indicated that the victim was best friends with Defendant's daughter; Defendant met the victim at a roller-skating rink where the girls socialized; and the victim would sleep over at Defendant's house on occasion, which is where the abuse began. The Commonwealth also shared a written statement from the victim's mother wherein she lamented not only about Defendant's pedophilic behavior, but also his dragging this matter out for two long, painful years in which he endlessly lied to investigators causing that much more questioning, examination, embarrassment, and humiliation of and to her daughter. Defense counsel addressed the denial issue by stating that there had been no challenge as long as he had been involved. Defendant apologized for his conduct. The Court sentenced Defendant with the expectation that a sexually violent predator hearing would be held at a later time upon praecipe by the Commonwealth.

On February 5, 2015, the Commonwealth filed a Praecipe for Hearing and Results of Evaluation, which indicated that the Sexual Offender Assessment Board determined Defendant to be a sexually violent predator and requested that the Court schedule a hearing. After some continuances, the hearing was ultimately held on October 14, 2016. By order dated October 19, 2016, the Court found Defendant to be a sexually violent predator. On November 10, 2016, Defendant filed a Notice of Appeal. On November 23, 2016, the Court ordered Defendant to file a concise statement of errors complained of on appeal. Defendant filed a concise statement complaining of one issue: "Whether the Court erred in relying upon improper evidence in

2

making its determination that Appellant Ortega met the criteria as a Sexual Violent Predator where the Court relied upon the defense's lack of response to the statement made at Sentencing by the victim's mother?"

## II. DISCUSSION

Under SORNA, the "court shall order an individual convicted of a sexually violent offense to be assessed by" the Sexual Offender Assessment Board (hereinafter "SOAB"). 42 Pa.C.S.A. § 9799.24(a). A member of the SOAB "shall conduct an assessment to determine if the individual should be classified as a sexually violent predator." § 9799.24(b). A "sexually violent predator" is defined as an individual who "is determined to be sexually violent predator under section 9799.24 (assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. "Mental abnormality" is defined as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* "Predatory" is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

In conducting the assessment, the following factors shall be examined:

(1) Facts of the current offense, including:
    (i) Whether the offense involved multiple victims.
    (ii) Whether the individual exceeded the means necessary to achieve the offense.
    (iii) The nature of the sexual contact with the victim.
    (iv) Relationship of the individual to the victim.
    (v) Age of the victim.
    (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
    (vii) The mental capacity of the victim.
(2) Prior offense history, including:

3

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. §9799.24(b).

SOAB member, Veronique N. Valliere, Psy.D., conducted an assessment on January 6, 2015. The assessment was solely records-based because Defendant declined to participate. Dr. Valliere issued a Sex Offender Evaluation report finding that Defendant meets the criteria to be classified as a sexually violent predator. Her in-court testimony was consistent with her report.

Defendant obtained his own evaluation from Frank M. Dattilio, Ph.D. While Dr. Dattilio reviewed many of the same documents as Dr. Valliere, his report and testimony were heavily laden and influenced by his interviews with Defendant and his family. In these interviews, Defendant apparently denied sexually abusing the victim (contrary to his guilty plea)[2] and minimized contradictory reports and evaluations concerning prior events. Despite his interviews and extensive testing, it was clear in his testimony that Dr. Dattilio did not have all relevant information available to him, such that even though he stood by his determination that Defendant does not meet the criteria to be classified as a sexually violent predator he vacillated somewhat and clearly had some reservations.[3]

With respect to the facts of the current offense, multiple victims were not involved; however, the sexual abuse did involve multiple sex acts over a period of time while Defendant's

---

[2] Dr. Dattilio testified that Defendant's denial of the current offense factored very much into his ultimate opinion.
[3] In his testimony, Dr. Dattilio agreed with Dr. Valliere that Defendant suffers from a mental abnormality. He disagreed that Defendant was predatorial.

children were in the home. Defendant did not do more than was necessary to gain the victim's compliance, relying on her naïveté, complimenting her, and intimating that he would go to jail if she told anyone. Defendant gained access to the victim and her trust through his daughter. He used this relationship to engage in sexual contact with the victim that included touching her breasts, kissing her, having her touch his penis, and penetrating her vagina with his penis. Defendant did not display any unusual cruelty. At the time of these offenses, the victim was 14 years of age and described as lonely.

With respect to Defendant's prior offense history, there are no criminal charges; however, Defendant was investigated and evaluated for sexually abusing his 14-year-old half-sister in or about 2002. Although he avoided criminal prosecution, it was obvious that he was aware of the illegality and consequences of his conduct. Defendant participated in therapy for the sexual abuse of his half-sister and was able to articulate responsibility and culpability. He had the resources and tools to manage his sexual arousal to adolescents but did not use them.

In considering the Defendant's characteristics, it is noted that he was 43 years old at the time of the offense. Per Dr. Valliere's report, his sexual arousal patterns and personality are established and not influenced by any substance abuse problem. As for the criterion of mental illness, disability, or abnormality, Defendant meets the criteria for Paraphilic Disorder, specifically being attracted to adolescent females. Despite knowing the consequences of his behavior, he has repeatedly pursued sexual activity with adolescents, first with his half-sister, then 10 years later with the current victim, and more recently with a young woman barely of the age of majority whom he has impregnated.[4] He exploited the victim knowing she was lonely without regard to the impact on his own daughter. His violation of legal, moral, and familial

---

[4] While this last relationship might be legal, the fact that Defendant pursued a woman much younger than himself is relevant.

5

boundaries has created significant dysfunction in his own life in addition to traumatizing his minor victims. All of this is indicative of a deviant and motivating sexual arousal that reflects a mental abnormality or personality disorder.

Defendant is a risk for re-offense. He has both related and unrelated victims. He recidivated even after having been investigated for the abuse of his half-sister and after having received treatment.[5] His Paraphilic Disorder is considered a manageable but not curable condition, meaning that it will persist for his lifetime.

Defendant's behavior meets the criteria to be deemed predatory. He was acquainted with the victim through his daughter and used that relationship to groom his own. He secretly texted the victim and sexualized his relationship with her, facilitating victimization.

Now, based upon the above discussion, it is clear that Defendant should be classified as a sexually violent predator. He meets the definition of "sexually violent predator" insofar as he has been assessed to have a "mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses." Although Defendant complains in his Concise Statement that "the Court relied upon the defense's lack of response to the statement made at Sentencing by the victim's mother," none of the above discussion relies on the testimony of the victim's mother.

The Court recalls that Dr. Dattilio was questioned about whether Dr. Dattilio considered the guilty plea colloquy in forming his opinion. Dr. Dattilio had not. After he was given the opportunity to read the transcript, he was asked whether anything in it changed his opinion. Dr. Dattilio said that the mother's stating that the abuse was ongoing for seven months raised a concern. Defense counsel suggested that the expert focus not on what the mother said, but

---

[5] Dr. Valliere testified that it is possible the treatment was not effective, but more likely the recidivism reflects the persistence of Defendant's sexual interests.

6

rather, he should focus on the agreement between the Commonwealth and Defendant that the abuse occurred between the summer and November, an arguably shorter period than 7 months. The Court attempted to clarify that the facts underlying the guilty plea are just one thing while the whole proceeding would be relevant to evaluating the Defendant's classification as a sexually violent predator. The Court was not focused in any way upon the mother's seven-month statement in rendering its decision, was not interested in arguing with defense counsel about what he did or did not do at the sentencing hearing in response to the seven-month statement, but was interested in hearing from the Defendant's expert, Dr. Dattilio, whether the whole context of the proceeding affected his opinion in light of the Defendant's telling Dr. Dattilio that he did not commit the offense. Dr. Dattilio responded that it did. Despite the effect of the entire sentencing proceeding on his opinion, despite being aware of Defendant's initially denying then later admitting to sexually abusing his half-sister, and despite recognizing that his testing showed that Defendant may experience periodic emotional and behavioral dysfunction causing him to conclude that Defendant struggles with personal limitations that cause him to engage in increased risk-taking behavior and erratic pursuits, Dr. Dattilio remained of the ultimate opinion that Defendant was not a sexually violent predator. After considering all of the testimony, the Court gave more weight to the opinion of Dr. Valliere.

## III. CONCLUSION

The assessments show that Defendant suffers from Paraphilic Disorder, a condition that qualifies as a "mental illness, disorder, or abnormality." Defendant's actions in abusing relationships to facilitate victimization shows his ability to use "predatory" behavior. Defendant's abusing a second victim after having received treatment for abusing his half-sister demonstrates his propensity for recidivism. It is clear he should be classified as a "sexually

7

violent predator."

For the foregoing reasons, it is respectfully suggested that the Court's October 19, 2016 classification of Defendant as a sexually violent predator should be affirmed.

BY THE COURT:

Scott D. Keller, Senior Judge

Distribution: Clerk of Court; District Attorney; Defense Counsel; Defendant