J-S75012-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY C. SAUNDERS | : | |
| | : | |
| Appellant | : | No. 445 WDA 2017 |

Appeal from the Judgment of Sentence February 1, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002794-2016

BEFORE: SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: FILED FEBRUARY 09, 2018

Appellant, Timothy C. Saunders, appeals from the judgment of sentence entered following his convictions of one count each of reckless burning or exploding and arson involving danger of death or bodily injury.[1] We affirm the convictions but vacate the portion of the judgment of sentence directing Appellant to pay restitution in the amount of $300.00.

The trial court summarized the facts of this case as follows:

The convictions arose from Appellant's actions on June 22, 2016 in setting fire to the vehicle of a former girlfriend, Deborah Lynn Marshall, in a parking lot at Eaton Reservoir, a/k/a Bulls Dam, in North East Township, Erie County, Pennsylvania. That day, while Marshall was walking with her dog around the reservoir, Appellant met up with her and made unwanted advances toward her. When Marshall rejected the advances,

_____

[1] 18 Pa.C.S. §§ 3301(d)(2) and 3301(a)(1)(i), respectively.

Appellant became angry and acted aggressively toward Marshall. Marshall ran from Appellant toward her vehicle, a 2004 green Jaguar. Appellant followed Marshall, entered his own vehicle and drove into the lot where Marshall's vehicle was parked. Appellant parked right beside Marshall's Jaguar, in the space in between the Jaguar and the space where the vehicle of Scott Bigley was parked. Bigley, a friend of Marshall's, was sitting in his vehicle waiting for Marshall to return from the walk. Marshall spotted Bigley, quickly got inside his vehicle and asked him to drive away to escape from Appellant. Confused, Bigley began to drive away. Appellant continued toward Bigley's vehicle and struck Bigley's windshield on the passenger side with his fist, cracking the windshield. Bigley and Marshall drove off. They stopped at a nearby establishment where they called friends to assist them in retrieving Marshall's vehicle. Approximately [twenty] minutes or so after Bigley and Marshall had fled the reservoir parking lot, Bigley and one of the friends returned to the parking lot where they found the back portion of Marshall's vehicle engulfed in flames. Firefighters and emergency personnel were called to the scene and the fire was extinguished. The evidence established the fire to Marshall's vehicle originated on the rear passenger side; the fire was incendiary in nature and Appellant caused the fire.

Trial Court Opinion, 6/27/17, at 1-2.

On December 20, 2016, at the conclusion of a nonjury trial, the trial court convicted Appellant of the crimes stated above. On February 1, 2017, the trial court sentenced Appellant to serve a term of incarceration of twelve to twenty-four months for the conviction of reckless burning or exploding, and a concurrent term of incarceration of forty-eight to ninety-six months for the conviction of arson involving danger of death or bodily injury. In addition, the trial court ordered Appellant to pay restitution in the amounts of $250.00, which was for the insurance deductible for Ms. Marshall's vehicle

that was destroyed by the fire, and $300.00, which was for the broken windshield of Mr. Bigley's vehicle.

Appellant filed post-sentence motions on February 10, 2017, which the trial court denied on February 22, 2017. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Did the Commonwealth present insufficient evidence to sustain Appellant's convictions for Arson Endangering Persons and Reckless Burning where the Commonwealth did not demonstrate that Appellant set the fire or that the fire placed any person in danger of death or bodily injury?

2. Were the trial court's verdicts contrary to the weight of the evidence where the trial court relied upon inconsistent or inconclusive evidence to convict Appellant?

3. Did the trial court err and impose an illegal sentence by ordering Appellant to pay restitution to Mr. Scott Bigley for alleged damage to a windshield where Appellant was not convicted of any crime where Mr. Bigley was a victim?

Appellant's Brief at 8.

Appellant first argues that there was insufficient evidence to support his convictions. Appellant's Brief at 21-27. Appellant contends that the Commonwealth failed to establish beyond a reasonable doubt that he was the person who set fire to Ms. Marshall's vehicle. Id. at 21-26. In addition, Appellant claims that the evidence presented by the Commonwealth did not demonstrate that he placed anyone in danger of death or bodily injury to support a conviction of arson endangering another person. Id. at 26-27.

We review a challenge to the sufficiency of the evidence with the following standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered.  Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

Commonwealth v. Bragg, 133 A.3d 328, 330-331 (Pa. Super. 2016), affirmed, 169 A.3d 1024 (Pa. 2017) (quoting Commonwealth v. Yong, 120 A.3d 299, 311 (Pa. Super. 2015)).

The Crimes Code defines the crime of reckless burning or exploding, in pertinent part, as follows:

> (d)  Reckless burning or exploding. — A person commits a felony of the third degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and thereby recklessly:

> * * *

- 4 -

(2)   places any personal property of another having a value that exceeds $ 5,000 or if the property is an automobile, airplane, motorcycle, motorboat or other motor- propelled vehicle in danger of damage or destruction.

18 Pa.C.S. § 3301(d)(2).

In addition, our Crimes Code defines the crime of arson endangering other persons, in relevant part, as follows:

(a)  Arson endangering persons.

(1)   A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

(i)   he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire[.]

18 Pa.C.S. § 3301(a)(1)(i).

We have reviewed the brief filed by Appellant,[2] the relevant law, the thorough opinion of the trial court, and the complete certified record before us on appeal.  It is our conclusion that the trial court's opinion adequately and accurately addresses Appellant's allegation that the Commonwealth failed to present sufficient evidence to support his convictions.  Trial Court Opinion, 6/27/17, at 5-21.  Accordingly, because the trial court's analysis is

_____

[2] We note with disapproval that the Commonwealth has failed to file a brief in this matter.

supported by the record, we adopt its opinion as our own, and conclude that Appellant's challenge to the sufficiency of the evidence lacks merit.[3]

In his next issue, Appellant argues that the verdict was against the weight of the evidence. Appellant's Brief at 27-29. Essentially, Appellant contends that the Commonwealth presented inconclusive and inconsistent evidence to convict Appellant. Id. at 28-29. As such, Appellant avers that the trial court abused its discretion in denying his request for a new trial. Id. at 29.

In Commonwealth v. Clay, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Commonwealth v. Widmer, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); Commonwealth v. Brown, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Widmer, 560 A.2d at 319-[3]20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" Id. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so

_____

[3] The parties are directed to attach a copy of the June 27, 2017 opinion in the event of further proceedings in this matter.

that right may be given another opportunity to prevail." Brown, 538 Pa. at 435, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Brown, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. Commonwealth v. Farquharson, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Widmer, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record

- 7 -

shows that the action is a result of partiality, prejudice, bias or ill-will.

Widmer, 560 A.2d at 322, 744 A.2d at 753 (quoting Coker v. S.M. Flickinger Co., 533 Pa. 441, 447, 625 A.2d 1181, 1184-[11]85 (1993)).

Clay, 64 A.3d at 1054-1055. "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." Commonwealth v. Diggs, 949 A.2d 873, 879-880 (Pa. 2008).

The trial court addressed this issue as follows:

Viewing the evidence against this standard, Appellant's weight of the evidence claim is without merit. The verdicts are not so contrary to the evidence as to shock one's sense of justice. The verdicts are amply supported by the evidence, as summarized herein. In reaching the verdicts, the [trial c]ourt specifically considered the weight of the evidence and the nature of the evidence in this case. The [trial c]ourt stated:

The Court: ... And what I have to do in this situation is apply my own common sense and human experience and further recognize that sometimes it's necessary to rely on circumstantial evidence in criminal cases, especially when the crimes are committed in secret.

I'm satisfied that the testimony of the witnesses was truthful and accurate. And I believe that the existence of the facts that they told us about, including the confrontation of the defendant with the victim ... Deborah Marshall ... her testimony, as well as the other evidence that was presented including the evidence of the note, the evidence of the phone calls, which takes me one step further here about the motive.

Now, the Commonwealth's not required to prove a motive, of course, but the evidence of motive it tells us that individuals have more propensity or are more likely to commit a crime if they have a motive rather

than if they have no motive. So I have to weigh and consider that evidence, along with all the other evidence in the case, in deciding whether or not, sir, you are guilty or not guilty.

And I'm giving great weight to what I think was a motive. I think for whatever reason you felt rebuffed by Ms. Marshall and in your drunken state you took your anger out on her and her friend who was simply coming to her rescue and giving her a ride home. It's not necessary for me to reiterate all the evidence, it was not a long trial, you were all sitting here listening to the testimony.

Tr. pp. 166-168.

The [trial c]ourt appropriately exercised its discretion in reviewing the evidence and assigning weight to the circumstantial evidence in the case. Appellant's weight of the evidence claim must be dismissed.

Trial Court Opinion, 6/27/17, at 23-24.

Based upon our complete review of the record, we are compelled to agree with the trial court. Here, the trial court, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant. The trial court weighed the evidence and concluded Appellant perpetrated the crimes in question. We agree that this determination is not so contrary to the evidence as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact-finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant relief on Appellant's challenge to the weight of the evidence.

In his final issue, Appellant argues that the trial court erred in imposing an illegal sentence when it ordered that he pay restitution for damage sustained to the windshield of Mr. Bigley's vehicle. Appellant's Brief at 29-32. Specifically, Appellant asserts that, because Mr. Bigley was not a victim of either crime of which Appellant was convicted, the portion of the sentence awarding restitution to Mr. Bigley must be vacated. We are constrained to agree.

The award of restitution is governed by Section 1106 of the Crimes Code, which provides, in pertinent part, as follows:

§ 1106. Restitution for injuries to person or property.

(a) General rule. — Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

18 Pa.C.S. § 1106(a).

In reviewing Appellant's issue, we are mindful of the following:

With regard to appeals stemming from the imposition of restitution as a condition of the judgment of sentence,

> [r]estitution may be imposed only for those crimes to property or person where the victim suffered a loss that flows from the conduct that forms the basis of the crime for which the defendant is held criminally accountable. In computing the amount of restitution, the court shall consider the extent of injury suffered by the victim and such other matters as it deems appropriate. Because restitution is a sentence, the amount ordered must be supported by

the record; it may not be speculative or excessive. The amount of a restitution order is limited by the loss or damages sustained as a direct result of defendant's criminal conduct and by the amount supported by the record.

Commonwealth v. Poplawski, 158 A.3d 671, 674 (Pa. Super. 2017) (quoting Commonwealth v. Dohner, 725 A.2d 822, 824 (Pa. Super. 1999) (internal citations and quotations omitted)). The sentencing court applies a "but for" test in imposing restitution; damages which occur as a direct result of the crimes are those which would not have occurred but for the defendant's criminal conduct. Poplawski, 158 A.3d at 674 (citing Commonwealth v. Wright, 722 A.2d 157 (Pa. Super. 1998)) (emphasis added).

The trial court has acknowledged that Appellant is correct and that it erred in sentencing Appellant to pay restitution to Mr. Bigley. Specifically, the trial court offered the following discussion:

> Appellant asserts the Court erred in ordering restitution in the amount of $300.00 to compensate Scott Bigley for the broken windshield to [Mr.] Bigley's vehicle. Appellant claims the Court erred in ordering this restitution because the Court acquitted Appellant at Count Two, Criminal Mischief.
>
> The factual basis of Count Two, the criminal mischief charge, was Appellant set fire to [Ms.] Marshall's vehicle causing damage in the amount of $499.00 or less.[3] See Information, Count Two. On technical grounds the Court found Appellant not guilty at Count Two. Tr. p. 168.
>
> [3] The record established the value of [Ms.] Marshall's Jaguar was far in excess of $499.00. Tr. pp. 13-15; 50.

At sentencing, the Commonwealth requested restitution of $300.00 to compensate [Mr.] Bigley for the damage to his windshield. See Transcript of Proceedings, Revocation/Sentencing Hearing (Tr. Sentencing), pp. 23-24. The Commonwealth stated: "I've been asked to request restitution for [Mr. Bigley] in the amount of $300.00." Based upon the offenses as charged, Appellant objected to restitution for [Mr.] Bigley. Tr. Sentencing, pp. 26-27. At Count One, Arson and Related Offenses (reckless burning or exploding), the Court ordered restitution to be paid to [Mr.] Bigley in the amount of $300.00. Tr. Sentencing, p. 31.

As the Court acquitted Appellant at Count Two, and [Mr.] Bigley is not the subject of the arson charge at Count One, it would appear Appellant has raised a viable claim of error in ordering restitution to [Mr.] Bigley at Count One. The Order of restitution in the amount of $300.00 must be set aside.

Trial Court Opinion, 6/27/17, at 26-27.

Because the damage to Mr. Bigley's windshield was not a direct result of the crimes of arson nor was it a loss flowing from those crimes, we are constrained to agree with the trial court. Consequently, we conclude that the trial court erred in imposing an order of restitution for the damage to the windshield of Mr. Bigley's vehicle. Hence, we vacate the portion of the judgment of sentence directing Appellant to pay restitution in the amount of $300.00 to Mr. Bigley.

Judgment of sentence affirmed in part as to the convictions and vacated in part as to the award of restitution of $300.00. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/9/2018

COMMONWEALTH OF PENNSYLVANIA    :    IN THE COURT OF COMMON PLEAS

                               :    OF ERIE COUNTY, PENNSYLVANIA

                               :

             v.                    :    CRIMINAL DIVISION

                               :

TIMOTHY C. SAUNDERS            :    NO. 2794 of 2016

## OPINION

This matter is before the Court on Appellant's 1925(b) Concise Statement of Matters

Complained of on Appeal. For the reasons set forth below, the judgement of sentence should be

affirmed.

## PROCEDURAL HISTORY

On December 20, 2016, following a non-jury trial, Appellant, Timothy C. Saunders, was

convicted of Count One, Arson and Related Offenses (reckless burning or exploding), a felony of

the third degree, and Count Three, Arson and Related Offenses (arson endangering persons), a

first degree felony.[1]

The convictions arose from Appellant's actions on June 22, 2016 in setting fire to the

vehicle of a former girlfriend, Deborah Lynn Marshall, in a parking lot at Eaton Reservoir, a/k/a

Bulls Dam, in North East Township, Erie County, Pennsylvania. That day, while Marshall was

walking with her dog around the reservoir, Appellant met up with her and made unwanted

advances toward her. When Marshall rejected the advances, Appellant became angry and acted

aggressively toward Marshall. Marshall ran from Appellant toward her vehicle, a 2004 green

Jaguar. Appellant followed Marshall, entered his own vehicle and drove into the lot where

Marshall's vehicle was parked. Appellant parked right beside Marshall's Jaguar, in the space in

---

[1] 18 Pa.C.S.A. §§3301(d)(2) and 3301(a)(1)(i), respectively.

1

between the Jaguar and the space where the vehicle of Scott Bigley was parked. Bigley, a friend of Marshall's, was sitting in his vehicle waiting for Marshall to return from the walk. Marshall spotted Bigley, quickly got inside his vehicle and asked him to drive away to escape from Appellant. Confused, Bigley began to drive away. Appellant continued toward Bigley's vehicle and struck Bigley's windshield on the passenger side with his fist, cracking the windshield. Bigley and Marshall drove off. They stopped at a nearby establishment where they called friends to assist them in retrieving Marshall's vehicle. Approximately 20 minutes or so after Bigley and Marshall had fled the reservoir parking lot, Bigley and one of the friends returned to the parking lot where they found the back portion of Marshall's vehicle engulfed in flames. Firefighters and emergency personnel were called to the scene and the fire was extinguished. The evidence established the fire to Marshall's vehicle originated on the rear passenger side; the fire was incendiary in nature and Appellant caused the fire.

On February 1, 2017, Appellant was sentenced to an aggregate of 48 to 96 months (four to eight years) of incarceration as follows.

> Count One: Arson and Related Offenses (reckless burning or exploding) –
> 12 months to 24 months of incarceration;
>
> Count Three: Arson and Related Offenses (arson endangering persons) –
> 48 months to 96 months of incarceration, concurrent with Count One.

The sentences imposed were within the standard range of the sentencing guidelines. The Court also ordered restitution in the amounts of $250.00 and $300.00.[2]

---

[2] Restitution of $250.00 was for the insurance deductible for the victim's vehicle which was destroyed by the fire. *Transcript of Sentencing Proceedings of February 1, 2017 (Tr. Sentencing). pp. 27-29.* The Commonwealth also requested restitution of $300.00 for the broken windshield of the vehicle of Scott Bigley. *Tr. Sentencing, pp. 23-24.* At sentencing, Appellant objected to restitution for Mr. Bigley. *Tr. Sentencing, p. 26.*

On February 10, 2017, Appellant filed a post sentence motion which the Court denied on February 22, 2017. Appellant filed a timely Notice of Appeal on March 16, 2017. Appellant filed a court-ordered statement of matters complained of on appeal on April 3, 2017.

Paraphrased, Appellant raises the following claims for appellate review:

1. The evidence is insufficient to support the verdicts.

2. The verdict is against the weight of the evidence.

3. The aggregate sentence is excessive.

4. The Court erred in directing Appellant to pay restitution of $300.00 for Scott Bigley's windshield.

## DISCUSSION

### I. The Sufficiency of the Evidence Claims

At Paragraph No. 3 of the 1925(b) Statement, Appellant generally claims "the verdict was based solely upon supposition and sympathy arising from the relationship between [Appellant] and the victim, Ms. Marshall and the alleged interactions between the two on the day of the fire, rather than proof of the Defendant's alleged activities that would constitute the elements of the offenses." *See 1925(b) Statement.*

At Paragraph Nos. 4 and 5 of the 1925(b) Statement, Appellant claims the Court erred in its "verdict." At Paragraph No. 4, Appellant claims the evidence was insufficient to prove Defendant started the fire and placed anyone in danger of death or serious bodily injury. At Paragraph No. 5, Appellant claims the Court erroneously concluded persons were placed in danger of death or serious bodily injury without receiving evidence in this regard. *See 1925(b) Statement.*

3

## A. Waiver of Claims

Appellant's sufficiency claims are waived as they do not comport with the requirements of Pa.R.A.P. 1925(b). The claims at Paragraph Nos. 3 through 5 of the 1925(b) Statement are waived for vagueness for two reasons. First, nowhere in these paragraphs does Appellant specify *which* arson verdict he is referring to. Appellant was convicted of *two* arson offenses. Although the offenses share common elements, each has elements not found in the other. Second, at Paragraph No. 3, Appellant baldly alleges "the verdict" was based upon supposition and sympathy, without specifying how supposition or sympathy played a role in reaching a verdict, or identifying what the Court was sympathetic to, other than the relationship between Marshall and Appellant. Without any reference whatsoever to the record, the Court is unable to respond to these vague, bald assertions.

Pursuant to Pa.R.A.P. 1925(b)(4)(ii), the 1925(b) Statement "shall concisely identify each ruling or error that the appellant intends to challenge *with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii)*(emphasis added). "When the trial court has to guess what issues an appellant is appealing, that is not enough for a meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. *Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa. Super. 2002)(internal quotation marks and citations omitted); *see also, Commonwealth v. Dowling*, 778 A.2d 683, 686-687 (Pa. Super. 2001). Accordingly, Appellant's claims regarding the sufficiency of the evidence are waived for vagueness.

4

## B. Sufficiency of the Evidence Standard

Assuming arguendo Appellant's challenges to the sufficiency of the evidence are not waived, as to each arson conviction the Court will assume that Appellant challenges the sufficiency of the evidence the fire was incendiary, and it was Appellant who set the fire. The Court will also assume that, as to the conviction at §3301(a)(1)(i), Appellant challenges the sufficiency of the evidence the fire recklessly placed another person, including but not limited to responding emergency personnel, in danger of death or bodily injury. *See 1925(b) Statement,* ¶¶4-5. Appellant does not dispute a fire occurred or the value of the vehicle. *See 1925(b) Statement.*

When evaluating a challenge to the sufficiency of the evidence, the Court must determine whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, together with all reasonable inferences from that evidence, the trier of fact could have found each element of the crime charged was established beyond a reasonable doubt. *Commonwealth v. Hargrave,* 745 A.3d 20, 22 (Pa. Super. 2000), *appeal denied,* 760 A.2d 851 (Pa. 2000)(internal citations omitted); *Commonwealth. v. Brunson,* 938 A.2d 1057, 1058 (Pa. Super. 2007); *Commonwealth v. Chambers,* 599 A.2d 630, 633 (Pa. 1991). The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. *Commonwealth v. Hopkins,* 747 A.2d 910, 913 (Pa. Super. 2000). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence, and any questions or doubts are to be resolved by the fact-finder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Hopkins, supra* at 913-14. The fact-finder is free to determine the credibility of each witness. *Commonwealth. v. Blystone,* 617 A.2d 778, 780 (Pa. Super. 1992);

5

*Commonwealth v. Smith*, 710 A.2d 1218, 1219 (Pa. Super. 1998). The fact-finder is free to believe "all, part or none" of the evidence presented to it. *Commonwealth v. Krouse*, 799 A.2d 835 (Pa. Super. 2002).

Viewing the evidence against this standard, Appellant's contentions are without merit. The evidence, viewed in the light most favorable to the Commonwealth, together with all reasonable inferences from the evidence, established beyond a reasonable doubt the elements of each arson offense.

## C. Elements of the Crimes

Pursuant to 18 Pa.C.S.A. §3301(d)(2), a person commits this offense, a third degree felony,

> if he intentionally starts a fire or causes an explosion ..., whether on his own property or on that of another, and thereby recklessly:
>
> ...
>
> (2) places any personal property of another having a value that exceeds $5,000 or if the property is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle in danger of damage or destruction.

*18 Pa.C.S.A. §§3301(d)(2).*

A person violates 18 Pa.C.S.A. §3301(a)(1)(i), a felony of the first degree:

> (1) ... if he intentionally starts a fire or causes an explosion ..., whether on his own property or on that of another, and if:
>
> > (i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire; ...
>
> ...

*18 Pa.C.S.A. §3301(a)(1)(i).*

6

In general, a conviction for arson requires that there was a fire, that it was of incendiary origin, and that Appellant set the fire. *Commonwealth v. Ford*, 607 A.2d 764, 766 (Pa. Super. 1992). *See also, 18 Pa.C.S.A. §§3301(d)(2), 3301(a)(1)(i).*

A conviction for arson at 18 Pa.C.S.A. §3301(a)(1)(i) also requires the reckless placement of another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire. *See 18 Pa.C.S.A. §3301(a)(1)(i).*

## D. Evidentiary Review

The Commonwealth presented testimony from the following witnesses. The Commonwealth also introduced numerous exhibits as described herein. Appellant did not present any witnesses. Appellant introduced a statement of Scott Bigley, who was called as a Commonwealth witness.

### 1. Deborah Lynn Marshall

Deborah Marshall is 48 years old. *Tr. p. 11.* She and Appellant were in a relationship in 2013, which ended in January, 2014. *Tr. pp. 12-13.* Marshall subsequently obtained a PFA against Appellant. The PFA was in effect on June 22, 2016. *Tr. p. 13.*

At 6:30 p.m. on June 22, 2016, Marshall drove to Eaton Reservoir, a/k/a Bulls Dam, in her 2004 Jaguar S10, to take a walk. Marshall had owned the vehicle, for which she paid $6,200.00, for approximately 9 months. *Tr. pp. 13-15; 50.* It was in good condition when the incident occurred. The gas cap and exterior gas cap panel were intact. *Tr. p. 28.*

She parked in a lot on Black Road and took her dog, Bella, for a walk on the 2.7-mile path around the reservoir. It was still daylight. When Marshall arrived, no one she knew was around. *Tr. pp. 13-16.*

7

During Marshall's walk, Appellant contacted her by cell phone. Appellant related he had attended a funeral that day and wanted Marshall to see him dressed up in his suit. Marshall told Appellant she was walking at the dam and didn't want to see him. Subsequently, Appellant showed up at the dam, headed in the opposite direction along the path toward Marshall. Appellant was wearing blue dress pants and a white button-down shirt with a collar. *Tr. pp. 16-18.*

Marshall believed Appellant was intoxicated, because his speech was slurred, he staggered and she was previously familiar with his behavior when he was intoxicated. Marshall decided to continue walking in the direction she was headed, as she believed this was the shortest distance back to her vehicle.

Appellant turned and walked alongside Marshall. *Tr. pp. 18-19.* He attempted to hug Marshall. As Marshall resisted Appellant's efforts, Appellant became increasingly angry and pushed Marshall off the walking path into the trees. Appellant spoke aggressively toward Marshall and spit at her twice. *Tr. pp. 19-20.* Marshall was afraid; she turned and started to run away. Marshall ran through the field from the first lot where Appellant's vehicle was parked, to the next parking lot where her vehicle was parked. Marshall described Appellant's vehicle as a maroon, older model Buick LaSabre. *Tr. pp. 20-21.*

Appellant got into his vehicle, pulled onto Black Road and drove into the second lot where Marshall's vehicle was parked. Appellant pulled in and parked between Marshall and her Jaguar. *Tr. pp. 21-22.*

While running toward her vehicle, Marshall observed the tan-colored vehicle of her friend, Scott Bigley, was parked nearby. *Tr. pp. 22-23.* Marshall ran to Bigley's vehicle and yelled to get his attention. Bigley unlocked the passenger door of his vehicle and Marshall and

8

her dog quickly got inside. Bigley started the ignition, backed up, paused, and pulled forward. As Bigley drove past Appellant, Appellant stepped up to the passenger side of the car, and struck and cracked the windshield. *Tr. pp. 25-26.* As Bigley drove out of the lot, Appellant's vehicle remained parked next to Marshall's vehicle. *Tr. p. 27.* As of that time, no notes or pieces of paper had been left on the hood or windshield of Marshall's vehicle. *Tr. p. 28.*

As Marshall was afraid to return for her car, Marshall and Bigley drove to a nearby local establishment where they telephoned friends, Stephanie and Danny. When the friends arrived, Bigley and Danny left to retrieve Marshall's vehicle, while Marshall and Stephanie remained behind. *Tr. pp. 28-29.* By this time, approximately 15 to 20 minutes had passed from the time Marshall and Bigley had left the lot where Marshall's vehicle was parked. *Tr. p. 29.*

While waiting for Bigley and Danny to return, Marshall observed fire trucks and rescue personnel head south on Route 89 toward the reservoir. *Tr. p. 29.* When Marshall arrived at the reservoir, her vehicle was smoking, and a fire to it had just been extinguished. The back portion of Marshall's vehicle, where the fire occurred, was parked on the grass. *Tr. p. 36.* The vehicle was in the condition as depicted in photographs marked as Commonwealth Exhibit Nos. 1 – 3. *Tr. p. 30.*

After Marshall returned home and charged her cell phone battery, she discovered three voice mail messages from Appellant, left between approximately 8:00 p.m. and 11:00 p.m. that evening. *Tr. pp. 32-33.* In two of the three messages, Appellant referred to Marshall's actions of that evening as being the "dumbest thing." *Tr. pp. 33-35; Commonwealth Ex. 4.*

Commonwealth Ex. No. 4 also includes video of the fire taken from a distance. This video depicts a vehicle parked next to pine trees. One end of the vehicle is on fire. Emergency vehicles approach with horns and sirens sounding. Fireman wearing protective gear rush toward

9

the vehicle with a hose, maintaining a distance. Some of the firefighters circle the vehicle with the hose and begin to spray water. White smoke billows from the vehicle. *Commonwealth Ex. 4.*

### 2. Scott Bigley

Scott Bigley is 52 years old. *Tr. p. 76.* On June 22, 2016, in late afternoon at approximately 5:00 p.m., Bigley went to the reservoir to see Deborah Marshall. *Tr. pp. 51-53.* Bigley waited for Marshall in his parked vehicle for 30 to 40 minutes. *Tr. pp. 51, 54.*

While Bigley waited, he observed Marshall's green Jaguar was present, backed in to a parking space. *Tr. pp. 53, 56, 73.* Marshall's vehicle was in "pristine" condition, and there were no papers or notes on Marshall's windshield. *Tr. p. 58.*

When Bigley looked up and first saw Marshall he was confused, because Marshall appeared terrified and was banging on his car window. Bigley unlocked the car door and let Marshall inside. Marshall quickly got in the car, told Bigley to lock the doors and "take off." *Tr. p. 54.*

Bigley saw Appellant, whom he had never met before, swing in and park next to Marshall's vehicle, between Marshall's vehicle and Bigley's vehicle. *Tr. p. 54-56.* Appellant appeared upset and agitated. *Tr. p. 56.* Bigley locked the car doors, started the ignition, and backed up. Bigley hesitated because he didn't understand what was happening. *Tr. p. 57.* Appellant exited his vehicle and approached Bigley's vehicle. Bigley started to drive away. As Bigley drove past Appellant, Appellant punched the passenger side of Bigley's windshield, smashing it. *Tr. pp. 56-58.* Bigley drive a bit further, and wanted to stop. Appellant continued coming toward Bigley's vehicle. At Marshall's urging, Bigley drove away, leaving behind both Marshall's vehicle and Appellant in the parking lot. Marshall's vehicle was intact and not on fire

10

when Marshall and Bigley left the parking lot. *Tr. pp. 57-58, 75.* As Bigley drove away, Appellant was approaching Bigley's vehicle in an angry manner. *Tr. p. 59.* Bigley noticed other vehicles in the lot, but did not recall seeing any other people. *Tr. p. 59.*

Bigley and Marshall went to a restaurant where Bigley called some friends so someone other than Marshall could return with Bigley to the lot to pick up Marshall's vehicle. *Tr. pp. 60, 71.* Approximately 20 minutes later, Bigley and another person returned to the lot. Marshall's vehicle was on fire when they arrived. *Tr. pp. 60, 71.* Though Bigley did not see Appellant with fire or a device that would have caused a fire, Bigley believed Appellant set Marshall's vehicle on fire based upon Appellant's behavior. *Tr. pp. 71-72.*

### 3. Wayne G. McCartney

Wayne McCartney is 37 years old and resides in North East, Pennsylvania. *Tr. p. 77.* On the day of the incident he did not know Appellant, Marshall or Bigley. *Tr. p. 77.* On the date of incident he parked in the Black Road parking lot and went mountain biking for a couple of hours at Eaton Reservoir, also known as Bulls Dam. *Tr. pp. 78-79.*

When McCartney returned from biking, there were at least a dozen cars in the lot, including a Jaguar that was backed in to a parking space. *Tr. pp. 79, 85.* McCartney's vehicle was parked "kitty-corner" from the Jaguar, approximately 30 feet away. *Tr. p. 79.* A large four-door sedan, brownish in color, was parked next to the Jaguar, about four feet away from it. *Tr. pp. 79, 83, 89.* The sedan was pulled straight in; it was not backed in to the space. *Tr. pp. 85-86.*

When McCartney returned to the parking lot, he detected the strong odor of gasoline. *Tr. pp. 80, 82.* McCartney and his companions inspected under their vehicles for a gas leak and found none. They did not determine the source of the gasoline odor. *Tr. p. 80.*

11

A few minutes later, McCartney noticed a male in the four-door sedan parked next to the Jaguar. The male had been lying across the front seat and lifted his head up over the front seat and looked at McCartney and his companions. *Tr. pp. 80-81*. The male exited the sedan and stood next to the Jaguar, then got back in the vehicle a couple of times. *Tr. pp. 80, 85*. The male was close enough to the Jaguar to touch it. *Tr. p. 87*. The male appeared to be in his 50's, he had grey hair and he wore a handkerchief head band. *Tr. pp. 80-81, 86, 89*. McCartney did not recall the time of day, but estimated it was late afternoon or early evening and it was still light out. *Tr. p. 85*.

Although McCartney observed a couple of people walk through the lot with their dogs, he did not observe anyone else approach the Jaguar or the four-door sedan. *Tr. p. 81*. It took McCartney and his companions approximately 20 minutes to load their bikes and leave. When McCartney left, the Jaguar and the four-door sedan were still there. *Tr. p. 83*. While McCartney was in the lot, he did not see a fire. *Tr. p. 88*.

McCartney had previously been to this parking lot numerous times. Never before had he smelled gasoline in the parking lot. *Tr. p. 82*.

### 4. Trooper John Stefanik, Pennsylvania State Police

Trooper Stefanik responded to a call received at approximately 9:00 p.m. on June 22, 2016 about a fire at Eaton Reservoir. *Tr. p. 93*. When he arrived at the scene, he observed a vehicle on fire with smoke coming from it, firemen and persons attempting to extinguish the fire. *Tr. p. 93*.

Trooper Stefanik investigated the scene of the fire. *Tr. p. 98*. He observed most of the damage was to the rear of the vehicle. There was also burn damage in the compartment. *Tr. p.*

12

97. The vehicle was towed to the impound lot where it was inspected by a certified fire marshal, Trooper Ken Hamilton. *Tr. pp. 97-98.*

### a. Note from Windshield

A fireman provided Officer Stefanik with a note recovered from the windshield of Marshall's vehicle. *Tr. pp. 93, 96, 98-99.* The note reads, "That was dumb!!" *Tr. p. 99.* The video of the fire shows a firefighter removing the note from beneath a windshield wiper. *Tr. pp. 98-99, Commonwealth Ex. No. 5 (video of fire from firefighter's head-mounted camera).* The note was admitted in evidence as Commonwealth Ex. No. 6. *Tr. pp. 98- 99.*

### b. Video of Fire from Head-Mounted Camera

Fire responders supplied the officer with a video of the fire, filmed by a firefighter wearing a head-mounted camera. This video was admitted in evidence as Commonwealth Ex. No. 5. *Tr. pp. 95-96.*

This video depicts Marshall's vehicle on fire. All firefighters in the vicinity of the vehicle are wearing protective gear, facemasks and oxygen tanks. As flames erupt from the vehicle, some firefighters attempt to extinguish the flames from a distance. Other firefighters approach the vehicle and use axes to break the windows and strike at the hood and trunk of the car. Broken glass splatters and white smoke billows from the vehicle. At the rear passenger side of the vehicle, flames shoot from the gas cap area. The gas cap and gas cap cover are not in place. Flames shoot from beneath the vehicle, in the back, on both sides. One firefighter uses an ax to silence the car horn mechanism underneath the hood. A firefighter retrieves a note from beneath a windshield wiper. The video shows the note reads, "That was dumb!!" *See Commonwealth Ex. No. 5.*

13

### c. Cigarette and Marlboro Pack

The officer also recovered a smoked Marlboro cigarette about five feet from the rear of the vehicle, on the passenger side, near the gas cap. *Tr. pp. 99-101.* He also recovered an empty Marlboro cigarette pack from the ground, about 12 feet from the gasoline intake of Marshall's vehicle, next to the pine tree where the vehicle was parked. *Tr. pp. 99-101.* The partially smoked Marlboro cigarette was admitted in evidence as Commonwealth Ex. No. 7. *Tr. pp. 100-101.* The empty Marlboro pack was admitted as Commonwealth Ex. No. 8. *Tr. pp. 100-101.*

### d. Photographs

While Trooper Stefanik was present, another officer photographed the vehicle after the fire was extinguished. The photographs were admitted in evidence as Commonwealth Ex. Nos. 9-19. *Tr. pp. 102-103.* Commonwealth Ex. No. 16 depicts the rear passenger side of the vehicle. In the photo, the panel which would cover the gas cap is missing. The gas cap is also missing. *Tr. p. 105.*

### e. Statements

Trooper Stefanik interviewed Marshall and Bigley at the scene. Marshall provided the officer with a written statement. Bigley did not write his own statement; Bigley signed the statement prepared by the officer. *Tr. p. 107.* Bigley was driving a 1997 tan Crown Victoria. *Tr. p. 112.*

### f. Interview of Appellant

Trooper Stefanik interviewed Appellant a few weeks after the incident. *Tr. p. 108.* Appellant had a full beard, similar to his appearance at trial. *Tr. p. 111-112.* Appellant admitted he was upset when he and Marshall parted ways on the date of the incident. *Tr. p. 109.* Appellant told the officer he smoked Marlboro Reds cigarettes, and another brand. *Tr. pp. 110,*

14

*117*. Appellant told the officer the reference to "dumb" on the note left in Marshall's windshield meant it was dumb of Marshall to call Bigley. *Tr. pp. 117-118*. Appellant admitted he had parked near Marshall at the reservoir. He denied knowing how the fire started, but said it could have been any one of Marshall's "ex's." *Tr. pp. 118-119*.

g. Appellant's Voicemail Messages

Marshall supplied Trooper Stefanik with three voice mail messages she received from Appellant, saved on a flash drive, and a revised written statement. *Tr. p. 110-111*. In the voicemail messages, Appellant was upset and used the word, "dumb." *Tr. p. 111*.

5. Trooper Kenneth A. Hamilton, Pennsylvania State Police

Trooper Hamilton was deputy fire marshal at the Meadville Barracks of the Pennsylvania State Police on the date of the incident. *Tr. p. 121-122*. He conducted a cause and origin investigation of Marshall's vehicle by inspecting the vehicle after it was secured and impounded. *Tr. pp. 124, 129, 139-140*. The officer's investigative report, with four attached photographs, was admitted in evidence as Commonwealth Ex. No. 19. *Tr. pp. 130-131*.

a. Findings

When Trooper Hamilton observed the vehicle, the gas cap and the outer door to the gas cap compartment were missing. *Tr. p. 125*. There were radial burns approximately 26 to 28 inches along the roof line of the vehicle, characteristic of an exterior rather than an interior fire. *Tr. p. 125*. There was damage to the rear seat cushions which did not extend to the front seat areas. *Tr. pp. 125-126*. There was nothing suspicious or wrong with the engine or front compartment of the vehicle, other than the fact firefighters had removed the front grill to open the hood. There was no extension of fire into or from the engine compartment. *Tr. pp. 126-127*.

15

On the undercarriage of the vehicle there was fire damage to the "lighter surfaces" of parts such as the brake lines, and to the truck compartment, most likely caused from the tires when they caught fire. *Tr. p. 127.*

b. Conclusions

Trooper Hamilton concluded the fire was an exterior incendiary fire, meaning it was caused from the outside of the vehicle by human intervention, whether intentional or accidental. The fire began at the rear side of the car. The fire was not caused by a mechanical failure. *Tr. pp. 124, 127-128, 131-132, 139, 142, 144.* The heaviest area of damage is normally the area of origin. *Tr. p. 140.* In this case, the heaviest area of damage was the passenger rear side of the vehicle, the same side as the fuel panel. *Tr. p. 143.* There was nothing on the vehicle in that area that would have caused the fire to occur. *Tr. p. 139.* The officer testified his findings were corroborated by the video of the fire, specifically, the video which depicted the vehicle was parked; it was half on the pavement and half off the pavement on cut grass; the fire was on the exterior of the vehicle and burning on the tires and where the brake lines would be, causing undercarriage damage. *Tr. pp. 128-129.* Also, the length of time the vehicle was parked would have allowed parts to have cooled off, such that there would not have been sufficient heat on the exhaust to automatically ignite any gasoline vapors. *Tr. pp. 128-129, 133-134.* The officer did not examine the scene of the fire at the reservoir because the scene was not secured after the vehicle was removed. *Tr. pp. 139-140.*

The video of the fire, which the officer did not view until after he prepared his expert report, corroborated the officer's findings and conclusions. *Tr. p. 126.* The video depicts the vehicle parked; the engine was not operating; the converters and the exhaust would have been cool at that point; the vehicle was half on the pavement and half off the pavement; the grass

16

under the vehicle appeared to have been cut so there was nothing under the vehicle to cause interference; and all the fire was on the exterior of the vehicle and burning under the vehicle on the tires in the area of the brake lines. *Tr. pp. 128-129.*

### E. Discussion – The Sufficiency of the Evidence

It is apparent the foregoing testimony established the elements of the arson crimes.

As to the convictions for arson at 18 Pa.C.S.A. §§3301(d)(2) and 3301(a)(1)(i), viewing the evidence in the light most favorable to the Commonwealth together with all reasonable inferences from that evidence, the trier of fact could have found the evidence established beyond a reasonable doubt the fire was incendiary in origin. The testimony of Troopers Stefanik and Hamilton, together with the videos of the fire and the photographs, sufficiently established the fire was caused from the outside of the vehicle by human intervention. *See Tr. pp. 92-120, 120-144; Commonwealth Ex Nos. 4, 5, 9-18, 19.* Appellant's claims the Commonwealth failed to sufficiently establish the fire was incendiary must be dismissed as meritless.

Also, as to both arson convictions, viewing the evidence in the light most favorable to the Commonwealth together with all reasonable inferences from that evidence, the trier of fact could have found the evidence established beyond a reasonable doubt Appellant set the fire.

"[P]roof of guilt, 'especially in arson cases,' may be established by circumstantial evidence." *Commonwealth v. DiNicola,* 468 A.2d 1078, 1080-81 (Pa. 1983), citing *Commonwealth v. Nasuti,* 123 A.2d 435, 438 (Pa. 1956). Although motive is not an essential element of the crime it is always relevant and admissible. *Commonwealth v. Ward,* 605 A.2d 796, 797 (Pa. 1992).

17

The evidence established Appellant was angry and upset when Marshall and Bigley drove from the parking lot where Marshall's vehicle was located. *Tr. pp. 56, 59.* Appellant was angry when Marshall rebuffed Appellant's unwanted physical advances during Marshall's walk at the reservoir. *Tr. pp. 19-20.* He remained upset when Marshall and Bigley fled the parking lot in Bigley's vehicle. At that time, Appellant struck and cracked Bigley's windshield. *Tr. pp. 25-26.* As Bigley drove away, Appellant continued to approach Bigley's vehicle in an angry manner. *Tr. p. 59.*

When Bigley and Marshall left the parking lot, the following conditions existed. Appellant remained behind in the parking lot. Appellant was angry. *Tr. pp. 57-58, 75.* Bigley noticed no other persons in the area. *Tr. p. 59.* Marshall saw some people kayaking in the water, but otherwise didn't recall seeing a lot of people around. *Tr. p. 28.* Appellant's vehicle was parked beside Marshall's vehicle. *Tr. p. 27.* Marshall's vehicle was not on fire when Marshall and Bigley drove away in Bigley's vehicle. *Tr. pp. 21-22, 27, 57-58, 75.* Marshall's vehicle was in excellent condition and its gas cap and gas cap cover panel were intact. *Tr. p. 28.* No note had been placed on Marshall's windshield as of that time. *Tr. pp. 28, 58.*

Not much later, Marshall's vehicle was found on fire. *Tr. p. 29.*

Later that evening, Marshall discovered three voice mail messages from Appellant, left between approximately 8:00 p.m. and 11:00 p.m. *Tr. pp. 32-33.* In two of the three messages, Appellant referred to Marshall's actions of that evening as being the "dumbest thing." *Tr. pp. 33-35; Commonwealth Ex. 4.* "Dumb", the root of the word used repeatedly in the voicemails from Appellant, was one of the words on the handwritten note a firefighter recovered from the windshield of Marshall's vehicle. *Tr. pp. 99; Commonwealth Ex. 6.*

18

Late in the day but while it was still light out, an independent witness, McCartney, returned to the lot where Marshall's vehicle was parked to pack up his biking gear and leave. McCartney's vehicle was parked about 30 feet from Marshall's vehicle. McCartney detected the strong odor of gasoline. He and his companions inspected the area around their vehicles, but were unable to determine the source of the gasoline odor. McCartney observed large four-door vehicle described as brownish in color parked next to Marshall's vehicle, about 4 feet away. McCartney testified the odor of gasoline could have come from either one of the vehicles: the Jaguar or the brownish vehicle. McCartney observed a male who had been laying across the front seat of the brownish vehicle lift his head up and look in McCartney's direction. McCartney observed the male exit the vehicle and stand next to Marshall's vehicle, close enough to touch it. The male returned to his vehicle and repeated this behavior several times. About twenty minutes later, McCartney and his companions left the parking lot. When McCartney left, Marshall's vehicle was present and McCartney did not observe any fire. *Tr. pp. 79-81, 84-85, 87-91.*

Testimony about the relative positions of the vehicles in the parking lot established the following. Marshall's testimony established that, as she ran toward her vehicle in the parking lot, Appellant parked in the space between Bigley's vehicle and Marshall's vehicle. *Tr. pp. 23, 42-43.* Bigley's testimony established Appellant parked in the space between Bigley's vehicle and Marshall's vehicle. *Tr. p. 56, 72.* McCartney testified the Jaguar was backed into its parking space. *Tr. p. 85.* The brownish vehicle was pulled straight in. *Tr. pp. 85-86.* There was no room for another car to fit in between the two vehicles. *Tr. pp. 86, 88.* McCartney testified from his experience, the parking lot is not very full, so typically cars do not park that close together. *Tr. p. 89.*

19

Based upon all the evidence, it would have been reasonable to conclude that, by the time McCartney returned to the lot to pack up his biking gear, Bigley and Marshall had departed in Bigley's vehicle, and it was Appellant's vehicle which McCartney observed parked right beside Marshall's Jaguar, so close there was no room for another vehicle to fit in between them. It would have been reasonable to conclude the person McCartney observed "hanging out" in the vehicle parked next to Marshall's vehicle was Appellant.

The evidence sufficiently established Appellant's motive and opportunity for setting the fire. This evidence, in combination with the note left on Marshall's windshield, Appellant's voicemail messages to Marshall the evening of the incident and the physical evidence at the scene including the partially smoked Marlboro cigarette and the empty Marlboro pack (Marlboro being a brand of cigarettes smoked by Appellant), *inter alia,* provided sufficient evidence for the Court to determine beyond a reasonable doubt Appellant was responsible for the fire.

As to the conviction for arson at 18 Pa.C.S.A. §3301(a)(1), viewing the aforementioned evidence in the light most favorable to the Commonwealth together with all reasonable inferences from that evidence, the trier of fact could have found the evidence, including the videos of the fire and the photographs, established the fire placed responding emergency personnel, including the firefighters, in danger of death or bodily injury. The video of the fire filmed by the camera mounted on the head of one of the firefighters depicted flames and smoke billowing from under the vehicle and visible through the opening where a gas cap and gas cap cover would normally be. The video establishes the view by the firefighter wearing the head-mounted camera of the hazards ahead of him would have been obstructed, at times, by the smoke that billowed from the vehicle as the firefighters worked to extinguish the flames. The video depicts shards of glass flying as the firefighter used an ax to break windows of the vehicle. The

20

firemen wore protective gear, including facemasks and oxygen tanks, to protect against fumes and the obvious smoke. *See Commonwealth Ex. No. 5 (video of fire from head-mounted camera); Commonwealth Ex. No. 4 (includes video of fire taken from a distance); Commonwealth Ex. Nos. 9-19 (photographs).* There is no doubt, based upon the evidence submitted, the fire placed responding emergency personnel in danger or death or bodily injury. Appellant's claims at Paragraph Nos. 4 and 5 of the 1925(b) Statement that the evidence was insufficient to prove Appellant placed anyone in danger of death or serious bodily injury, and the Court did not receive evidence persons were placed in danger of death or serious body injury, are belied by the record and are wholly lacking in merit.

## II. The Weight of the Evidence Claims

At paragraph no. 7 of the 1925(b) Statement, Appellant generically asserts he "believes and avers that the verdict is against the weight of the evidence and therefore he is entitled to a new trial." *See 1925(b) Statement, ¶7.*

### A. Waiver of Claim

The bald averment is waived for vagueness. First, Appellant fails to identify *which* verdict is against the weight of the evidence. Second, Appellant fails to identify any basis for the claim a verdict is against the weight of the evidence. As previously discussed, when an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. *Commonwealth v. Lemon*, 804 A.2d at 37. *See also, Pa.R.A.P. 1925(b)(4)(ii).* Where an appellant merely asserts the verdict is against the weight of the evidence, without offering

21

specific reasons as to why those verdicts were contrary to the weight of the evidence, the weight of the evidence claim is waived. *See Commonwealth v. Freeman, supra, at 1248-1249. See also, Commonwealth v. Hansley,* 24 A.3d 410 (Pa. Super. 2011). Here, Appellant fails to indicate how the weight of the evidence fails to support the convictions. The Court should not be forced to guess what Appellant is referring to. The claim is waived.

## B. Weight of the Evidence Standard

Assuming arguendo the claim is not waived, the Court will address the weight of the evidence as to both convictions.

A verdict is against the weight of the evidence "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Blakeney,* 946 A.2d 645, 652 (Pa. 2008). See also, *Commonwealth. v. Thompson,* 648 A.2d 315, 324 (Pa.1994). A true weight of the evidence challenge "concedes that sufficient evidence exists to sustain the verdict but contends that the verdict was against the weight of the evidence." *Armbruster v. Horowitz,* 744 A.2d 285, 286 (Pa. Super. 1999)(citations omitted). An allegation the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth. v. Brown,* 648 A.2d 1177, 1189 (Pa. 1994).

"Appellate review, therefore, is a review of the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." *Id.* "A trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence." *Commonwealth. v. Brown,* 648 A.2d at 1190.

According to the Supreme Court: "[W]hen the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion." *Commonwealth. v. Brown,*

22

648 A.2d at 1189, quoting *Thompson v. City of Philadelphia*, 493 A.2d 669, 673 (Pa. 1985).

"Needless to say, ... a trial court's refusal to award a new trial because the verdict is claimed to

be against the weight of the evidence is one of the least assailable of the trial court's rulings."

*Commonwealth v. Thompson*, 648 A.2d 315, 324 (Pa.1994).


## C. Discussion – Weight of the Evidence

Viewing the evidence against this standard, Appellant's weight of the evidence claim is

without merit. The verdicts are not so contrary to the evidence as to shock one's sense of justice.

The verdicts are amply supported by the evidence, as summarized herein. In reaching the

verdicts, the Court specifically considered the weight of the evidence and the nature of the

evidence in this case. The Court stated:

The Court:  ... And what I have to do in this situation is apply my own common sense and human experience and further recognize that sometimes it's necessary to rely on circumstantial evidence in criminal cases, especially when the crimes are committed in secret.

I'm satisfied that the testimony of the witnesses was truthful and accurate. And I believe that the existence of the facts that they told us about, including the confrontation of the defendant with the victim ... Deborah Marshall ... her testimony, as well as the other evidence that was presented including the evidence of the note, the evidence of the phone calls, which takes me one step further here about the motive.

Now, the Commonwealth's not required to prove a motive, of course, but the evidence of motive it tells us that individuals have more propensity or are more likely to commit a crime if they have a motive rather than if they have no motive. So I have to weigh and consider that evidence, along with all the other evidence in the case, in deciding whether or not, sir, you are guilty or not guilty.

And I'm giving great weight to what I think was a motive. I think for whatever reason you felt rebuffed by Ms. Marshall and in your drunken state you took your anger out on her and her friend who was simply coming to her rescue and giving her a ride home. It's

23

not necessary for me to reiterate all the evidence, it was not a long trial, you were all sitting here listening to the testimony.

*Tr. pp. 166-168.*

The Court appropriately exercised its discretion in reviewing the evidence and assigning weight to the circumstantial evidence in the case. Appellant's weight of the evidence claim must be dismissed.

## III. Sentencing Claims

Appellant raises two sentencing issues. Appellant claims the aggregate sentence of four to eight years of incarceration is excessive "under the circumstances." *See 1924 (b) Statement,* ¶8. Appellant also claims it was error to impose a sentence of restitution for $300.00. Appellant does not oppose the order of restitution for $250.00. *See 1924 (b) Statement,* ¶9.

### A. Claim the Sentence is Excessive

#### 1. Waiver of Claim

Appellant's bald claim the aggregate sentence was excessive is waived as vague. Appellant was convicted of two arson offenses. The 1925(b) Statement fails to identify in what respect or respects the sentence was excessive. Appellant fails to point to the "circumstances" which render the sentence excessive. As the Court is unable to respond to Appellant's bald assertion of excessiveness, the claim is waived. *See Commonwealth v. Lemon,* 804 A.2d at 37; *Pa.R.A.P. 1925(b)(4)(ii.)*

24

## 2. Merits of Claim

Assuming, *arguendo*, Appellant's bald claim the sentence was excessive is not waived, it does not raise a substantial question meriting review of the sentence.

Appellant's claim the sentence was excessive and unreasonable is a challenge to the discretionary aspects of his sentence. *See Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa. Super. 2003); *Commonwealth v. Lutes*, 793 A.2d 949, 964 (Pa. Super. 2002). One of the requirements in challenging the discretionary aspects of the sentence is that Appellant raise a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *42 Pa.C.S.A. §9781(b)*; *Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013). Moreover, to establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. *Commonwealth v. McAffee*, 849 A.2d 270, 274-275 (Pa. Super. 2004)(internal citation omitted).

Appellant has not forwarded a plausible argument that the sentence, which is within the guideline ranges, is clearly unreasonable. In the 1925(b) Statement, Appellant forwarded no argument whatsoever in support of this contention. Appellant baldly claims the sentence is excessive "under the circumstances", yet fails to identify any circumstance in support of the claim. The bald assertion does not constitute a plausible argument this sentence, which is in the guideline ranges, is clearly unreasonable. Further, Appellant has not shown actions by the trial

25

court inconsistent with the Sentencing Code, or contrary to the fundamental norms underlying the sentencing process. Thus, Appellant has failed to raise a substantial question meriting review of the sentence.

Appellant's bald claim is belied by the record. As the sentence does not exceed the statutory limits and is not manifestly excessive, this Court's sentence must not be disturbed. *Com. v. Ellis, 700 A.2d 948, 958 (Pa. Super. 1977)*.

### B. Restitution Claim

Appellant asserts the Court erred in ordering restitution in the amount of $300.00 to compensate Scott Bigley for the broken windshield to Bigley's vehicle. Appellant claims the Court erred in ordering this restitution because the Court acquitted Appellant at Count Two, Criminal Mischief.

The factual basis of Count Two, the criminal mischief charge, was Appellant set fire to Marshall's vehicle causing damage in the amount of $499.00 or less.[3] *See Information, Count Two*. On technical grounds the Court found Appellant not guilty at Count Two. *Tr. p. 168*.

At sentencing, the Commonwealth requested restitution of $300.00 to compensate Scott Bigley for the damage to his windshield. *See Transcript of Proceedings, Revocation/Sentencing Hearing (Tr. Sentencing), pp. 23-24*. The Commonwealth stated: "I've been asked to request restitution for [Scott Bigley] in the amount of $300.00." Based upon the offenses as charged, Appellant objected to restitution for Bigley. *Tr. Sentencing, pp. 26-27*. At Count One, Arson and Related Offenses (reckless burning or exploding), the Court ordered restitution to be paid to Bigley in the amount of $300.00. *Tr. Sentencing, p. 31*.

---

[3] The record established the value of Marshall's Jaguar was far in excess of $499.00. *Tr. pp. 13-15; 50.*

26

As the Court acquitted Appellant at Count Two, and Bigley is not the subject of the arson charge at Count One, it would appear Appellant has raised a viable claim of error in ordering restitution to Bigley at Count One. The Order of restitution in the amount of $300.00 must be set aside.

CONCLUSION

For the above reasons, the judgment of sentence should be affirmed. The Clerk of Courts is hereby directed to transmit the record to the Superior Court.

BY THE COURT:

_6/27/2017_
Date

Daniel J. Brabender, Jr., Judge

cc: District Attorney's Office
   Stephen J. Lagner, Esq., Office of the Public Defender